# Gribbel, Appellant, v. Brown.

*Practice, C. P.—Trial—Trial of two cases together—Equity practice.*

Where two equity cases by different plaintiffs against the same defend-
ant, are tried together, the court should consider each case separately on the
evidence produced in the respective cases.

On the trial of a bill in equity for an accounting against a mortgagee in
possession, where it appears, as far as the evidence in the case is concerned,
that the plaintiff is entitled to the relief which he seeks, the court cannot
dismiss the bill on the ground that in a case tried at the same time against
the defendant by the husband of plaintiff's grantor, there is disclosed an
alleged champertous agreement by which the plaintiff took title to the prop-
erty involved in the one case and agreed to pay the costs of the other case,
to carry out a combination to secure the defendant's property in the one
proceeding, and to secure her business in the other.

*Equity—Mortgagee in possession—Account.*

A finding that the defendant holds real estate as mortgagee in posses-
sion, entitles the person having the legal title and being the owner, to
maintain a bill for an accounting, and thereafter the right to redeem the
property on payment to the mortgagee of such sum as may be found to
be due.

Argued Jan. 17, 1902.   Appeal, No. 265, Jan. T., 1901, by
plaintiff, from decree of C. P. No. 2, Phila. Co., March T.,
1898, No. 899, dismissing bill in equity in case of John Gribbel
v. Martha A. Brown.   Before McCollum, C. J., Mitchell,
Dean, Fell, Brown, Mestrezat and Potter, JJ.   Reversed.

Bill in equity for an account.

Sulzberger, J., filed the following opinion:

1. The realty particularly described in the first paragraph of the bill was on January 20, 1894, vested in Earnest L. Harris in fee simple. On September 3, 1894, the paper title passed to Benjamin B. Smith, on the same day from him to Alyce M. Harris, wife of said Earnest, and on March 16, 1898, to the plaintiff.

2. On June 16, 1894, Earnest L. Harris mortgaged said premises for $2,500 to one Louis Holzman, whose mortgage has been assigned to the defendant.

3. On June 18, 1894, judgment on bond and warrant accompanying a mortgage on said premises was entered by the defendant against Earnest L. Harris for $4,000. The said mortgage was given to secure the payment of $120 yearly to the defendant for her life.

On the same day there was a like judgment between the same parties for $4,628. The mortgage accompanying this bond and warrant was given to secure the payment of $4,000 three years after October 7, 1892.

4. On a day not fixed in the month of June, 1894, Earnest L. Harris leased the realty to his brother, Andrew Harris, for one year from June 1, 1894, at $1,800 yearly, with a right to a further term of five years on three months' notice given before the expiration of the year.

5. On or about June 18, 1894, Earnest assigned this lease to the aforesaid Holzman, who subsequently assigned it to the defendant. Afterwards, on March 16, 1898, Earnest again assigned the lease of the plaintiff.

6. Early in August, 1895, the interest of the lessee was sold at sheriff's sale and bought by the defendant.

7. The defendant as assignee of the lessee gave no notice of her intention to continue on the premises, and hence her lease was ended at midnight of May 31, 1895.

8. She has continued in possession from thence hitherto as mortgagee in possession.

9. The estate is subject to a small ground rent, to a prior mortgage of $15,000, and to the usual public charges, all of which she has paid. The incumbrances herein mentioned are prior to hers.

10. The rent reserved by the lease was $1,800 per year, and the said amount is the reasonable rental value of said premises.

11. By reason of difficulties between the defendant and Earnest L. Harris, her son, no account has been stated between the parties, though it was shown at the hearing that she has not in her possession any rents or profits from the premises applicable to the reduction of the principal of the mortgages.

The plaintiff has taken title from Alyce M. Harris, wife of Earnest L. Harris, and, it would appear from the evidence, without consideration. Were the plaintiff a mere volunteer, he would be entitled to redeem, and under the facts found, the defendant would ordinarily be liable to account, and on payment or tender of the amount due, would be ordered to reconvey.

The evidence in this case and in the case of Harris v. Brown, which was tried with it, shows, however, that Gribbel, the plaintiff, is not entitled to equitable relief.

It is plain that he has formed a combination with Andrew and Earnest, the two sons of the defendant, to maintain this cause for the purpose of deriving advantages from it, in the following manner:

The defendant is carrying on the making of gas meters on the premises in question, under the name of Harris Brothers & Company. The plaintiff carries on a rival business in Philadelphia as a member of the firm of Griffin & Company. This firm wants to acquire the name of the defendant's firm and put the latter out of business. For this purpose the plaintiff has taken title to the premises under discussion. He has not presented himself as a witness and his grantors have poor memories, so that the exact terms of the arrangement between them are not in evidence. Nevertheless, there is enough to find the facts. Alyce M. Harris testified that "he promised to protect us, and it was given as a deed of trust." Earnest answered evasively. A written contract, of about the same time as the plaintiff's deed, was produced, made between plaintiff and Andrew Harris, the brother. This provided for a sale of the business name, the stock, fixtures, machinery, and plant of the defendant's business, to be recovered by suit against the defendant, which suit should be maintained by the money of the plaintiff. This remarkable agreement is recited at length in the opinion this day filed in the case of Harris v. Brown, which was tried with this case. From the whole evidence it is clear

that about March, 1898, a combination was formed between the plaintiff and the two sons of the defendant, Andrew and Earnest, whereby lawsuits should be started against the defendant, with the purpose to enable the plaintiff to become the owner of the defendant's business without buying the same from her or treating for it with her. This purpose was to be maintained by the plaintiff, who agreed to furnish the money to carry on the lawsuits. The present cause he brought in his own name, and thus directly incurred the costs, while the suit of Andrew Harris was stimulated by his contribution of money and his promise of future payments. By the present cause he was to get possession of the defendant's premises, by the suit of Andrew Harris he was to get her name and business.

The plaintiff's desires were perfectly lawful. There was no reason why he should not, if he wished, acquire the defendant's business. There are many reasons why he should not acquire it in the way he has chosen to pursue. All the circumstances force us to the conclusions that the plaintiff's doings in this cause come within Hawkins's definition of champerty, to wit: " The unlawful maintenance of a suit in consideration of some bargain to have part of the thing in dispute, or some profit out of it."

And his position in a court of equity is no better than at law: Sir WM. GRANT in Stephens v. Bagwell, 15 Ves. 139; Lord ELDON in Wood v. Downes, 18 Ves. 120.

As an interest to be acquired by champerty cannot be recognized, it follows that the plaintiff is not a volunteer, but a mere stranger, without interest.

On the whole case, the bill should be dismissed at the costs of the plaintiff, without prejudice, however, to the right of Earnest L. Harris or his wife, Alyce M., or one duly entitled under them.

*Error assigned* was decree dismissing bill.

*R. L. Ashhurst* and *John G. Johnson*, for appellant.

*Richard C. Dale*, with him *John F. Keator*, for appellees.

OPINION BY MR. JUSTICE MESTREZAT, March 3, 1902 :
This is a bill for an accounting against a mortgagee in pos-

session.   The learned trial judge has found the facts of the case and concedes that were it not for alleged champertous relations between the plaintiff and Mrs. Alyce M. Harris, from whom he purchased the real estate in question, the defendant would be liable to account in this proceeding.   The judge holds the plaintiff to be guilty of champerty for the reason that he had taken title to the premises for the purpose of carrying on a rival business thereon and for the further reason that by a written contract with Andrew Harris, he agreed to furnish Harris money to prosecute a suit against Mrs. Brown, the defendant here, to obtain control of the gas meter business and the use of the name of Harris Brothers & Company under which it had been conducted, so that he (the plaintiff) might secure the property and business name of the firm.   It appears that in pursuance of that agreement, Harris instituted a suit against Mrs. Brown at the same time this suit was brought by Gribbel against her, and both were heard and determined together by the same judge.   This fact unquestionably accounts for the conclusion of the judge that the transaction involved in this litigation is champertous.   His conclusion, as appears from his finding, is based upon the evidence in the two cases and is not confined to the testimony in this case.

We are relieved from any discussion or a determination of the question of champerty as affecting this case.   There was no evidence whatever produced before the court on the trial by which a charge of that character can be sustained.   It may be conceded that the plaintiff is a mere volunteer and that no consideration passed to Alyce M. Harris when she conveyed the premises to Gribbel.   This, however, the learned judge admits would not, under the facts found by him, deprive the plaintiff of the right to an accounting in this suit.   The allegation that Gribbel purchased the property to prevent competition in his business is not sustained by the evidence in this case.   He might have had that object in view but it is not disclosed by the testimony in the case nor does it appear that such was the purpose of Mrs. Harris in the transfer of the title to the premises to Gribbel.   The purchase of the real estate, so far as the evidence discloses, was an ordinary business venture on the part of the plaintiff which he might very properly engage in without being justly subject to criticism.   If there is

any part of the purchase money yet due Mrs. Harris, the grantor, it is a matter that concerns her and not the defendant in this case.

It is apparent, however, that the principal and controlling reason that led the learned judge to condemn the purchase of the real estate as champertous was the "remarkable agreement" between Gribbel and Andrew Harris which was before him in the case of Harris v. Brown, post, p. 16. That case is now here for review and from it we learn the contents of the agreement. There are two most potent reasons why that contract should not have been considered in this case and can have no weight in determining the issue here against the plaintiff, viz : (1) it was not offered in evidence in this case by either party, and (2) upon its face it appears that it provided for and related solely to an action to be brought against Mrs. Brown to enforce the alleged rights of Andrew Harris to the property and firm name of Harris Brothers & Company, so that Gribbel might purchase said property and acquire the exclusive right to use the name. The contract between Andrew Harris and Gribbel in no way refers to or affects the sale and conveyance of the real estate to the plaintiff. Notwithstanding these facts, the opinion of the learned judge shows that he considered that contract as though it were in evidence in this case and permitted it practically to determine the issue in favor of the defendant.

While this case was tried with Harris v. Brown, the learned judge should have considered each separately on the evidence produced in the respective cases. Had he eliminated the testimony in Harris v. Brown from this cause, he would have arrived at a different result. We fail to find any evidence to support the conclusion of the court below that the plaintiff is not entitled to relief in this suit.

The finding of the trial judge shows that since May 31, 1895, Mrs. Brown, the defendant, has been in possession of the premises and now holds them as a mortgagee in possession. The plaintiff, therefore, having the legal title to and being the owner of the real estate, has a right to maintain this bill for an accounting and thereafter the right to redeem the property on payment to the defendant of such sum, if any, as may be found to be due to her.

The decree of the court below is reversed, and the bill is reinstated with a procedendo.