Ames, Appellant, *v.* Hillside Coal & Iron Company.

Argued January 23, 1934. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*M. J. Martin,* with him *Ralph W. Rymer,* for appellant.

*Reese H. Harris,* of *O'Malley, Hill, Harris & Harris,* with him *John P. Kelly,* of *Kelly, Balentine, Fitzgerald & Kelly,* for appellee.

OPINION BY MR. JUSTICE LINN, March 19, 1934:

This appeal is from a decree dismissing plaintiff's bill on the ground of champerty.[1] It might also have

---

[1] The bill was filed in March, 1923; in May, (defendant's answer was filed; in September, a replication; January 7, 1924, after taking evidence had begun, defendant obtained a rule to show cause why it should not withdraw its answer and file a general demurrer.

been dismissed for laches. On December 3, 1900, by a contract attached to the bill as Exhibit A, the owners of certain coal or culm banks "demised, leased and sold ......all the coal in and composing" the banks to defendant, which agreed to "screen, separate and ship" the coal "with due diligence" and to pay specified royalties per ton, varying for specified sizes and with annual minimums, "until all the merchantable coal of the above sizes available from the said culm banks has been screened and shipped or paid for." It was also agreed that defendant "shall have the right to use, sell or otherwise dispose of all the refuse coal and all the coal smaller than the above sizes without any further payments whatsoever." Defendant took possession and conducted operations. It paid royalties until July 1, 1906.

So far as appears, this bill, filed in 1923, is the first complaint that defendant had failed to perform its obligations under Exhibit A. Though not a party to that contract, plaintiff, by his bill, asserts rights under it. He contends that the vendors' rights, under Exhibit A, vested in him pursuant to a contract of December 30, 1921, attached to the bill as Exhibit B, made by him and the surviving vendor and the personal representatives of the deceased vendors, who, in 1900, by Exhibit A, had sold the coal to defendant.

Exhibit A is a contract of sale of all the mined coal and refuse in certain culm banks, payment for all to be made at rates applied to certain sizes (see New York and Pittston Coal Co. v. Hillside Coal & Iron Co., 225 Pa. 211, 74 A. 26),[2] with the right to erect and maintain

---

December 9, 1925, it was agreed by the parties that the rule to withdraw the answer and file a demurrer be made absolute and that the court pass upon the questions raised by the demurrer. The case was then argued, but, remaining undecided, was reargued in 1933, and the decision made from which this appeal is taken.

[2] In this case it was said, at page 214: "Here all [the coal] can be mined and removed from the premises, and this is the end of any claim for royalties for sizes below those for which the lessee is to

washeries and necessary appliances to remove and market the coal. This mined coal was personal property.

By Exhibit B, his vendors purport to sell to plaintiff "all their right, title and interest in" the culm banks which had theretofore been sold to the defendant. An important inquiry, then, is what "right, title and interest" remained in them for sale to plaintiff after the sale to defendant? It is conceivable that defendant might have defaulted and that a forfeiture might have been declared, resulting in the re-vesting of title in the vendors, but both the bill and Exhibit B are silent on the subject; or, perhaps, Exhibit A was a sale on installments, title passing as the coal was paid for, but this is not the theory of plaintiff's bill. As a bill for a declaration of forfeiture, it is defective in various respects. So far as we have been able to understand the transaction pleaded, the vendors had disposed of the culm bank to defendant, which was not in default in paying for any royalty-bearing coal when Exhibit B was executed; there is no averment that defendant was in default as to such coal. The vendors, too, are particular to state that they do not covenant for quiet title and that plaintiff "takes possession with the full knowledge that he is obliged to maintain title......" The ninth and tenth paragraphs of the agreement are as follows:

"NINTH: In view of the fact that on some of the culm piles and banks herein sold, demised and leased to the Lessee [plaintiff in this suit] certain quantities of coal, culm and other materials have been removed by other parties, the Lessors hereby give to the Lessee the right to sue for the royalties that have accrued and are now due and owing on said culm, coal and other materials on a quantum meruit basis, that is to say, on some fair royalty basis, and the Lessee covenants and agrees with the Lessors that he will assume and pay all the expenses,

---

pay for the sole and exclusive privilege of mining and removing every pound of merchantable coal on the premises."

such as attorneys' fees, engineers' fees, witness fees, and other incidental expenses, for all litigation that may be brought to maintain the rights of the Lessee as owner of said culm piles and the royalties due for the removal thereof from said culm piles prior to the date of this lease. In the event that there shall be a recovery for the culm, coal and other materials heretofore taken away from the banks herein demised, then it is agreed by and between the Lessors and Lessee that from the moneys thus realized by the activities and efforts of the Lessee there shall be first deducted the costs of the litigation, or the costs of the preparation for litigation, and the net amount remaining is to be divided equally between the Lessors and Lessee.

"TENTH: For the purpose of giving the Lessee full authority in regard to the coal, culm and other materials heretofore taken away from the culm banks herein sold and demised, the Lessors do specifically assign, transfer and set over unto the Lessee all their right, title and interest in and to all the coal, culm and other materials heretofore taken away by parties unknown to the Lessors, together with full authority to the Lessee to sue in his own name, or to compromise in his own name for such coal, culm and other materials taken away from the banks herein demised, subject to the provision herein contained in the foregoing paragraph."

Pursuant to these paragraphs of the contract, plaintiff demands royalties and compensation for coal removed from the culm banks by defendant, and by others, said to be unknown to him, asserting that defendant is in possession and is not paying royalties; he prays, inter alia, for an account and full disclosure of defendant's record, for payment, possession, and for cancellation of Exhibit A.

There is no direct averment that all the royalty-bearing coal had not been removed by July 1, 1906, when the last payment of royalty was made; if a fact, relied on as breach of contract, it should have been averred:

Thompson's Appeal, 126 Pa. 367, 17 A. 643. The provision is that, on default in payment of royalties for 60 days, "the Lessors, at their option, may declare the terms of the lease at an end." There is no averment that the defendant's vendors exercised the option and declared the lease ended; nothing to explain or account for the omission to demand royalties, if due, from July, 1906 to March, 1923, when suit began. Laches appears on the face of the bill: cf. Drake v. Lacoe, 157 Pa. 17, 27 A. 538. It is an objection that may be taken on general demurrer (Hayes's Appeal, 113 Pa. 380, 386, 6 A. 144), and is sufficient to sustain the decree.

But this lapse of time without complaint is also an element for consideration in dealing with the champertous character of the agreement, on which the learned court below based its decree. While there has been some relaxation in the application of the common law doctrines of champerty and maintenance in this,[3] as well as in other jurisdictions,[4] champerty, repugnant to public policy, is still ground for denying the aid of the court: cf. Waychoff v. Waychoff, 309 Pa. 300, 163 A. 670; Gribbel v. Brown, 202 Pa. 10, 14, 51 A. 587, 588; Bedell v. Oliver H. Bair Co. Inc., 104 Pa. Superior Ct. 146, 150, 158 A. 651, 653.

"A bargain to endeavor to enforce a claim in consideration of a promise of a share of the proceeds, or of any other fee contingent on success, is illegal, if it is also part of the bargain that the party seeking to enforce the claim shall pay the expenses incident thereto" (Restatement, Contracts, section 542) unless such party (section 543) already has or reasonably believes he has an interest recognized by law in the claim. "An assignment of a claim......is not rendered illegal by the

---

[3] Stoever v. Whitman, 6 Binney 415; Cresson v. Miller, 2 Watts 272; McKissick v. Pickle, 16 Pa. 140; Perry v. Dicken, 105 Pa. 83; Williams v. Phila., 208 Pa. 282, 57 A. 578.

[4] Taylor v. Bemiss, 110 U. S. 42; Peck v. Heurich, 167 U. S. 624, 630; 5 R. C. L., section 5, page 273.

fact that...... litigation is necessary for its collection; nor is such an assignment......rendered illegal by the further fact the assignee promises to endeavor to enforce the claim at his own expense and pay the assignor a share of the proceeds, unless the assignee gives no other substantial consideration" (Restatement, Contracts, section 547).

All the marks of champerty designated in these sections are to be found in Exhibit B. The plaintiff agreed to bear all the expenses incident to the litigation, though, when the contract was made, he had no interest in the culm banks; the purported assignment of the remainder, if any, cannot bring him within the excepted class.[5] He gave nothing for the assignment, assumed no definite obligation to extract and pay for coal; he loses nothing, if not allowed to sue defendant on the alleged claim of another. There appears to be support for the following statement made in defendant's brief: "This is not the case of a person being in possession of a valuable property and having imposed upon him a duty to maintain his title. It is the case of a man attempting to use a court of chancery to ransack the records, accounts and transactions of a company, beginning with December 4, 1900, in order to discover whether the lessors had a reason for forfeiting the lease which they did not know of, in the hope that something might be found which would enable him, not a party to the original lease, to ask for cancellation in order that he might come into

---

[5] In appellant's brief it is said, "......the plaintiff had a very substantial interest in the subject-matter in that he owned the culm banks in question with a right to sell and dispose of them as he saw fit." We do not so understand the case presented; plaintiff had only the "right, title and interest" of his vendors, in culm previously sold and delivered by them to defendant; there was no declaration of default prior to the filing of the bill. Even if plaintiff acquired a substantial interest, not existing before this agreement, it would not relieve the contract of champerty.

possession and share the benefits with the original lessors or their personal representatives."

It is significant, in this inquiry, that plaintiff's assignors assume no obligation by their assignment; they disclaim warranty of title and quiet possession, and merely authorize plaintiff, at his expense, to litigate all possible causes of action that he might discover. Indeed, Exhibit B is not clear as to what rights assignors thought they had, nor does plaintiff's bill make it any clearer. Equity will not aid the parties to such a contract: Bispham, Equity (9th ed.), section 166, page 285; Pomeroy's Equity Jurisprudence (4th ed.), volume 3, section 1276, page 3071. But, as has been said, it is clear that, for 15 years preceding the assignment to plaintiff, his assignors had not attempted to declare or enforce default, if any, under Exhibit A. Finally, it must be added, as, perhaps, not without bearing on this subject, that plaintiff has not been diligent in prosecuting the suit begun in 1923.

The decree is affirmed at the cost of appellant.