RANDALL, Circuit Judge:
 

 Plaintiffs Zarnoff Samford and Martin Trailer Toters, Inc. (“MTTI”) appeal- the district court’s determination that Samford had no standing to pursue an antitrust claim against defendants because his right to sue on behalf of MTTI was based upon an assignment which was invalid under the ancient and little used doctrine of champerty. Plaintiffs also claim that MTTI’s suit against defendants was also improperly dismissed. We vacate the district court’s judgment and remand for further proceedings.
 

 Martin Trailer Toters, Inc. is a Louisiana corporation begun in 1962 as a sole proprietorship by Harry Martin. Martin later incorporated the business, and in 1967, he transferred one share of the corporation’s stock to his son-in-law, plaintiff Zarnoff Samford, and one share to Samford’s brother, Shirkee Samford. On February 26, 1973, Zarnoff Samford ended his ownership in MTTI by selling his stock to his brother Shirkee. Shirkee thereby became the sole owner of MTTI. At about this time Zar-noff Samford ended his employment relationship with MTTI.
 

 Shirkee Samford filed for bankruptcy three years later on January 26, 1976, and in the course of the bankruptcy proceedings in the spring of 1976, his MTTI stock became the property of the Washington Bank and Trust Company of Bogalusa, (“Washington Bank”), one of Shirkee Samford’s creditors.
 

 On March 6, 1976, while the bankruptcy proceedings were ongoing, Zarnoff Sam-ford, Shirkee Samford, and Harry Martin, in their individual capacities as former or then-present owners of MTTI, brought an antitrust action in federal district court against defendants Morgan Drive Away, Inc., National Trailer Convoy, Inc., and Transit Homes, Inc. The complaint alleged violations by defendants of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. The plaintiffs sought injunctive relief as well as damages for injuries to MTTI allegedly caused by defendants’ practices. Defendants moved to dismiss on the ground that the plaintiffs as shareholders had no standing to file an action for injuries sustained by the corporation. On April 23, 1976, plaintiffs amended their complaint by adding MTTI as a plaintiff.
 

 On June 14, 1976, plaintiffs filed a “Second Amending Complaint” which stated that on January 16, 1976 (two months
 
 *601
 
 prior to the original complaint and ten days before Shirkee Samford filed for bankruptcy), MTTI had assigned its claim against defendants to Zarnoff Samford. Because this allegation, if true, would have made Zarnoff Samford the only proper party plaintiff, Samford did not oppose defendant’s motion for dismissal as to Shirkee Samford and Harry Martin. On June 23, 1976, Zarnoff Samford filed a “Third Amending Complaint” that eliminated these original parties, and they were subsequently dismissed by the court.
 

 After Samford had filed his “Third Amending Complaint,” defendants sought and obtained permission to engage in discovery to ascertain who the proper party plaintiffs, if any, were in this case. Two years later, on June 9, 1978, defendants filed a supplemental memorandum in support of their motion to dismiss. Defendants now argued that the assignment of MTTI’s claim to Zarnoff Samford was a conveyance in fraud of Shirkee Samford’s creditors; therefore the conveyance was void and Zar-noff Samford had no standing to seek recovery.
 

 Zarnoff Samford responded to the motion to dismiss by alleging that on May 8, 1978, he entered into an agreement with Washington Bank by which he purchased all of MTTI’s stock. Under the terms of the agreement Samford paid Washington Bank $1,000 immediately, promised to pay $4,000 more within three months, and promised to pay Washington Bank “other valuable consideration” out of the proceeds of the suit with defendants as follows:
 

 NOW, therefore, it is understood and agreed by and between the parties hereto that the other valuable consideration contained in the sale of the Martin Trailer Toters, Inc. stock unto Zarnoff O. Sam-ford is to be payment of the remaining indebtedness of FIFTY-NINE THOUSAND, NINE HUNDRED AND THIRTEEN AND NO/100 ($59,913.00 DOLLARS), owed to the Washington Bank and Trust by Martin Trailer Toters, Inc. at the completion of the above mentioned lawsuit and after the completion of said lawsuit out of the proceeds, if any, received by way of settlement or judgment.
 

 IT IS FURTHER UNDERSTOOD that the said Zarnoff O. Samford is prosecuting and controlling the aforementioned antitrust claim against the named defendants above mentioned and is to be responsible for all costs of litigation.
 

 II. Rec. 262-63.
 

 Samford now asserted that, as sole owner of MTTI, he had the right to sue on its behalf. He also asserted the right to bring the lawsuit in his individual capacity. Defendants argued in response that the agreement with MTTI was champertous on its face and therefore void, and that Samford could not sue on behalf of MTTI. Defendants also argued that Samford had not established a personal injury which would permit him to sue in an individual capacity.
 

 The trial court denied defendants’ motion to dismiss on March 9, 1979, and gave Sam-ford time to amend his complaint to state the grounds upon which he based his individual claim of injury for violations of the anti-trust laws. Samford made no amendments, and on April 18, 1980, the trial court dismissed the plaintiffs’ complaint against defendants. It held that the agreement with Washington Bank was champertous and void and that Samford could not use the agreement to maintain his suit; the court also held that Samford had not stated sufficiently a theory upon which he could sue in an individual capacity. The trial court did not mention MTTI as a plaintiff or MTTI’s suit when the court dismissed defendants. Samford and MTTI appeal from this dismissal of their suits.
 

 We make two observations before beginning our analysis of this case. First, we note that Zarnoff Samford has abandoned his claim that he has individual standing to prosecute this law suit. In a supplemental memorandum filed on March 6, 1979, Sam-ford stated that
 

 there is no longer any need for him as
 
 an individual
 
 to proceed, consequently, this plaintiff
 
 in his individual capacity
 
 does not object to his dismissal as an individual
 
 without prejudice.
 
 Although this
 
 *602
 
 plaintiff agrees with the Court that he has an individual claim, he does not wish to assert it because such a claim may cause confusing proof of damage problems to the jury all of which may unduly complicate the case and prolong this litigation. (emphasis in original)
 

 Because Samford has abandoned his individual claim, we do not consider whether the trial court’s later dismissal for lack of individual standing was proper. We are thus left with the question only of whether Samford has standing as owner of MTTI or as an assignee of MTTI’s claims against defendants.
 

 Second, the parties made all of their arguments to this court and the trial court below in terms of whether Samford has standing to litigate MTTI’s claim. The trial court also apparently accepted this characterization, as it dismissed the suit against defendants on the grounds that the fact that the agreement with Washington Bank was champertous left Samford with no standing to prosecute his claim. Our view of the matter is that the problems presented here are better described as involving the question of whether Samford is the real party in interest in this litigation under Rule 17(a). Although the defendants have not raised the real party in interest claim in this litigation, the standing issue was raised from the very beginning, and in the circumstances of this case, where Samford has no individual claim, we are convinced that he has standing only if he is the real party in interest by virtue of ownership of MTTI or an assignment therefrom.
 
 See Piambino v. Bailey,
 
 610 F.2d 1306 (5th Cir.),
 
 cert. denied,
 
 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980);
 
 Audio-Visual Marketing Corp. v. Omni Corp.,
 
 545 F.2d 715 (10th Cir. 1976);
 
 United States v. 936.71 Acres of Land, More or Less, in Brevard County, State of Florida,
 
 418
 
 F.2d
 
 551 (5th Cir. 1969). Hence the analysis which follows will focus upon whether Samford is the real party in interest to this lawsuit.
 

 These preliminary considerations aside, our view of the case, simply stated, is that the trial court erred in not holding an evidentiary hearing on the issue of Sam-ford’s standing to prosecute this action. As discussed
 
 infra,
 
 Samford’s standing or its absence is based upon several disputed issues of fact. Thus a summary disposition of the type made by the trial court was inappropriate.
 
 [1]
 

 The first problem concerns the alleged January 16, 1976 assignment of MTTI’s claim to Zamoff Samford. The trial court made no mention of this assignment in its dismissal of Samford’s claim, discussing only Samford’s lack of individual standing and his lack of standing as assignee based upon the allegedly champertous Washington Bank agreement. However, if the January 16, 1976 assignment was a valid one, lack of individual standing and the invalidity of the Washington Bank agreement would be irrelevant, for the 1976 assignment by itself would have given Sam-ford standing.
 

 Defendants argue that even if this is so, Samford abandoned this theory of standing after he alleged the existence of the agreement with Washington Bank. However, we find the record ambiguous as to this point. It is true that Samford did not mention the 1976 assignment when he alleged that he had purchased MTTI’s stock from Washington Bank in 1978. On the
 
 *603
 
 other hand, Samford never deleted the reference to the 1976 assignment in his complaint. Moreover, although he stated that he was abandoning his “individual” theory of standing, it is not at all clear that this included the theory based upon the 1976 agreement. Hence we think it was improper for the district court to have neglected addressing this issue when it dismissed the defendants. .
 

 It is of course possible that the 1976 agreement is an invalid assignment of MTTI’s claims. The defendants have suggested in their brief and elsewhere in the record that, in view of the fact that the assignment occurred ten days before Shir-kee Samford filed for bankruptcy, the assignment was a fraud upon Shirkee Sam-ford’s creditors and therefore invalid. As a threshold matter, before making any determination as to the validity of the assignment, it would be necessary to make a determination as to the defendants’ standing to challenge the assignment on this basis and whether that standing is affected by later agreement with the Washington Bank. If the defendants do have standing, then an evidentiary hearing will be necessary to determine the legal status of the assignment.
 

 Champerty Issues
 

 The trial court held that Samford had no standing to sue on behalf of MTTI because the Washington Bank agreement which gave him standing was champertous on its face and therefore void. We disagree.
 

 Champerty is an extremely ancient doctrine which developed early in the history of the common law, but whose roots go back even further.
 
 [2]
 
 Its scope has generally been constricted in the past century. At present, in some jurisdictions, the doctrine does not exist at all at common law and a statutory scheme is all that remains.
 
 E. g., Alexander v. Unification Church of America,
 
 634 F.2d 673 (2d Cir. 1980) (applying New York law).
 

 A champertous agreement is one in which a person without interest in another’s litigation undertakes to carry on the litigation at his own expense, in whole or in part, in consideration of receiving, in the event of success, a part of the proceeds of the litigation. 14 C.J.S. Champerty and Maintenance § 1 (1939).
 
 See
 
 Restatement of Contracts § 540(2), § 542(1) (1932). Champerty is a special form of maintenance, which is essentially officious in-termeddling in a suit in which one has no interest by assisting a party in its prosecution. Champerty is maintenance with compensation derived from the proceeds of the suit. 14 C.J.S. Champerty and Maintenance §§ 2 and 3 (1939).
 
 [3]
 

 Samford argues that the law of Louisiana, the forum state as well as the forum where the assignment was entered into,
 
 *604
 
 should determine the validity of the assignment, and therefore that the Louisiana law of champerty controls. If this were a diversity case, the question would be easily determined. However, Samford is suing under the federal antitrust laws.
 

 The general rule is that the question of whether a person is a real party in interest under Rule 17(a) is decided by the substantive law of the forum which created the right being sued upon.
 
 U. S. v. 936.71 Acres of Land,
 
 supra; 6 Wright & Miller, Federal Practice and Procedure: Civil § 1544 (1971); 3A Moore’s Federal Practice § 17.07 (2d ed. 1976). Virtually all of the cases which have considered the question have been diversity cases involving a state-created cause of action. In
 
 Caldwell v. Ogden Sea Transport, Inc.,
 
 618 F.2d 1037 (4th Cir. 1980), the court raised the question of whether federal or state law controls the assignment of a federal maritime claim but found it unnecessary to decide the question in the light of the particular circumstances of that case.
 

 As discussed in note 3,
 
 supra,
 
 there is a line of precedent holding that federal antitrust claims are assignable as a matter of federal law. Our concern here, however, is not with the substance of assignable claims, but with the form in which the claim may be assigned.
 
 Sampliner v. Motion Picture Patents Co.,
 
 255 F. 244 (2d Cir. 1918),
 
 rev’d on other grounds,
 
 254 U.S. 233, 41 S.Ct. 79, 65 L.Ed. 240 (1920), is the only case we have been able to discover which addresses this question.
 
 Sampliner
 
 also involved an assignment of a Sherman Act claim. The court noted that antitrust claims were assignable, but then went on to inquire whether, nevertheless, the assignment might be invalid for champerty. It discussed basic common law principles of champerty and then applied the state law of Ohio, where the assignment was made:
 

 It is said, however, that this assignment was made in Ohio; that the assign- or was an Ohio corporation; that the assignee was domiciled in Ohio; that apparently there was at the time no intention of bringing suit on the assignment elsewhere than in Ohio; that whether the lex loci contractus or the lex loci solution-is is to determine the validity of the assignment that the law in this case is the law of Ohio. There is no disagreement on either side on this phase of the subject. We have examinated the cases in Ohio, and we have been unable to discover that the question which this case presents has been passed upon by the courts of that state, or that there is anything in the statutes of the state or the decisions of its highest court which should lead us to think that by the law of that state the assignment is valid.
 

 255 F. at 250. The court then went on to discuss the relevant Ohio law.
 
 [4]
 
 Thus, following
 
 Sampliner, we
 
 should apply the champerty doctrines of Louisiana, the law of the place of assignment, as well as the place in which the assignment would be executed and performed, and where all parties to the assignment reside.
 
 Sampliner
 
 
 *605
 
 appears to hold then, as a matter of
 
 federal
 
 law, that the federal courts should look to
 
 state
 
 law. The decision is, however, to be distinguished from the position that state law applies because the federal court sits in a given state and thus should apply its laws under
 
 Erie
 
 principles.
 

 In
 
 Three Rivers Motors Co. v. Ford Motor Co.,
 
 522 F.2d 875 (3d Cir. 1975);
 
 Miami Parts & Spring, Inc. v. Champion Spark Plug Co.,
 
 402 F.2d 83 (5th Cir. 1968); and
 
 Twentieth Century-Fox Film Corp. v. Winchester Drive-In Theatre, Inc.,
 
 351 F.2d 925 (9th Cir. 1965),
 
 cert. denied,
 
 382 U.S. 1011, 86 S.Ct. 620, 15 L.Ed.2d 526 (1966), it was held that federal and not state law governs the validity of a release of antitrust claims.
 
 See generally
 
 1A Moore’s Federal Practice ¶ 0.323[2] (2d ed. 1976). There is a hidden tension between these decisions and
 
 Sam-pliner,
 
 since they apply a rule of federal law in the interests of uniformity of treatment of antitrust claims whereas
 
 Sampliner
 
 applies federalist conflict of law notions which suggest that local law will control. Nevertheless, we will follow the decision in Sam-
 
 pliner,
 
 as it does enunciate a general federal rule and is the only case we have discovered which is directly on point.
 
 [5]
 

 Louisiana, being a civil law jurisdiction, does not apply general common law principles of champerty. Instead, an equivalent of the doctrine has been created by statute. La.Civ.Code Ann. art. 2447 (West) prohibits the sale of “litigious rights” to “officers of the court,” including attorneys. It has long been settled in Louisiana that this prohibition does not apply to persons who are not “officers of the court.”
 
 Gilkerson-Sloss Commission Co. v. Bond,
 
 44 La.Ann. 841, 11 So. 220 (1892) (parties who purchased claim were not officers of the court and restrictions of article 2447 did not apply to them);
 
 cf.
 
 La.Civ.Code Ann. art. 2652 (West) (“He against whom a litigious right has been transferred, may get himself released by paying to the transferee the real price of the transfer, together with the interest from its date.”). Hence under Louisiana law, the 1978 agreement was not champertous.
 
 [6]
 

 Disposition on Remand
 

 Having disposed of the champerty issue, we next discuss the areas of concern the district court should focus upon on remand.
 

 
 *606
 
 To begin with, the district court should consider whether the 1976 assignment to Samford gives him an independent basis of standing to pursue this action. First, the
 
 *607
 
 district court must address the standing of the defendants, as indicated above; then, assuming that the defendants do have standing, the court must determine whether the assignment is valid, or whether, as defendants have suggested, the assignment is a fraud on creditors.
 

 If the court finds that the 1976 agreement is invalid and grants no standing to Samford, the court must next consider whether the 1978 agreement, coming two years after the suit was filed, gives Sam-ford a right to sue. The 1978 agreement would make Samford the real party in interest as of 1978, but he might not have been a proper party in 1976 when the suit was filed. MTTI, from whom Samford received the claim, might have been a proper party then, and it was joined as a plaintiff by Samford’s first amended complaint. The court must decide, however, in the light of the bankruptcy proceedings pending in early 1976, who had authority to bring MTTI into this suit as a plaintiff, and what effect, if any, this question has on whether MTTI was properly a plaintiff when Sam-ford’s complaint was amended to include it as.one. In sum, the court must decide, based upon the facts and circumstances of the case, to what extent Samford’s acquisition of standing in 1978 would relate back to the time of filing.
 

 Finally, even if Zarnoff Samford has no standing to bring this suit on behalf of MTTI, MTTI was listed independently as a plaintiff in the complaint. When the district court dismissed defendants from this action, it therefore apparently dismissed MTTI’s suit as well as Samford’s. On remand the district court should consider whether MTTI is properly a party to this suit even if Samford is not. This question will involve consideration of who now owns MTTI and who had authority to bring suit against defendants on behalf of MTTI when the original complaint was amended to include MTTI as a plaintiff.
 

 In deciding these matters and resolving who is a proper party to this suit, the court should make clear whether it bases its actions on Rule 12(b)(1), a motion for dismissal based on subject matter jurisdiction, or upon some other ground; this may have a significant impact on the question of relation back, as well as on the standards of review by an appellate court. The trial court is strongly encouraged, after a full evidentiary hearing, to state its views in terms of findings of fact and conclusions of law. Although with respect to decisions under Rule 12 and Rule 56 the Federal Rules of Civil Procedure do not require a trial court to make findings of fact,
 
 see
 
 Rule 42(a), it is a very useful practice, and often invaluable for later appellate review.
 
 See generally Williamson v. Tucker,
 
 645 F.2d 404 (5th Cir. 1981). Finally, because of the complexity of these issues, a request for additional briefing by the parties may be necessary and is also strongly recommended.
 

 The judgment of the district court is vacated and the case remanded for further proceedings consistent with the above. The defendants shall bear all the costs of this appeal.
 

 VACATED and REMANDED.
 

 [1]
 

 . The trial court dismissed the suit under Rule 12(b), but did not specify whether the dismissal was under 12(b)(1), lack of subject matter jurisdiction, or 12(b)(6), failure to state a claim upon which relief can be granted. If the latter, the court could not look beyond the face of the pleadings and thus if dismissal was conditioned upon contestable issues of fact, the trial court’s action was improper. If the court’s action was based on Rule 12(b)(1), it could go beyond the pleadings to determine its own jurisdiction, but since it did not hold an evidentiary hearing to determine the disputed factual issues, its dismissal on that ground would also be improper.
 
 See Williamson v. Tucker,
 
 645 F.2d 404 (5th Cir. 1981). This circuit has stated that dismissal for lack of subject matter jurisdiction “should be granted sparingly,” and that “where adequate time is given to complete discovery and all the jurisdictional facts are fully developed and placed before the court during an adversary hearing, a district court may, in a clear-cut case, dismiss an anti-trust suit for lack of subject matter jurisdiction.”
 
 Chatham Condominium Associations v. Century Village, Inc.,
 
 597 F.2d 1002, 1012-13 (5th Cir. 1979).
 

 [2]
 

 . For an account of the origins and genesis of the doctrine,
 
 see generally
 
 Radin,
 
 Maintenance by Champerty,
 
 24 Calif.L.Rev. 48 (1934).
 

 [3]
 

 . Defendants do not argue that the assignment here is champertous because it is an assignment of a claim
 
 ex delicto
 
 rather than a contractual claim.
 
 See
 
 14 C.J.S. Champerty and Maintenance § 6; Restatement of Contracts § 547(l)(d). It is well settled in the federal courts that antitrust claims are assignable.
 
 E. g., Jefferson City Pharmaceutical Association, Inc. v. Abbott Laboratories,
 
 656 F.2d 92 (5th Cir. 1981);
 
 D’Ippolito v. Cities Service Company,
 
 374 F.2d 643 (2d Cir. 1967);
 
 Louisiana Farmers’ Protective Union, Inc. v. Great Atlantic & Pacific Tea Company of America,
 
 131 F.2d 419 (8th Cir. 1942);
 
 Hicks v. Bekins Moving & Storage Co.,
 
 87 F.2d 583 (9th Cir. 1937);
 
 United Copper Securities Co. v. Amalgamated Copper Co.,
 
 232 F. 574 (2d Cir. 1916). In
 
 Sampliner v. Motion Picture Patents Co.,
 
 255 F. 242 (2d Cir. 1918),
 
 rev’d on other grounds,
 
 254 U.S. 233, 41 S.Ct. 79, 65 L.Ed. 240 (1920), the court explained:
 

 At common law no right of action, whether a right in rem or a right in personam, whether it arose ex contractu or ex delicto, was assignable. Lord Coke wrongly attributed the rule to the doctrine of maintenance and the aversion to the “multiplying of contentions and suits.” Lampets’ Case, 10 Rep. 48a. The rule is older than the doctrine of maintenance in English law. As Professor Ames, in his Lectures on Legal History, 211, 212, pointed out, the reason for the rule is in the fact that a chose in action always presupposes a personal relation between two individuals and that personal relation cannot be assigned. And see Pollock on Contracts (5th Ed.) 206; Holmes, Common Law, 340, 341; 2 Spence, Eq.Jur. 850. But the courts of equity always recognized the assignment of choses
 
 *604
 
 in action, and in England and in this country generally statutes have been passed which have modified the rule that choses in action are not assignable at law. So that now rights of action arising ex contractu and those arising ex delicto, but not for personal torts, are assignable. The right of action which the Lake Shore Company claimed to have for the damages it sustained by reason of the tor-tious acts of the defendants was assignable. In
 
 United Copper Securities Co.
 
 v.
 
 Amalgamated Copper Co.,
 
 232 Fed. 574, 577, 146 C.C.A. 532, this court held that a right of action for property injuries based on a violation of the Sherman Act, and brought under section 7 for treble damages, is assignable.
 

 255 F. at 245. The court argued, however, that although the substance of the right sued upon may be assignable, the form of the assignment may make it void for champerty.
 
 Id.
 
 at 246.
 
 See
 
 Restatement of Contracts § 547 comment f. Defendants’ point here is essentially that the fact that Samford and Washington Bank are agreeing to split the proceeds of the litigation is what makes their agreement champertous.
 

 [4]
 

 . When
 
 Sampliner
 
 was appealed to the Supreme Court, the Court, in reversing the Second Circuit’s decision did not dispute that Ohio law applied: rather, it held that under the doctrine of champerty used by the lower court, a question of fact for the jury was presented, so that the lower court could not properly have held the agreement champertous as a matter of law. 254 U.S. 233, 239-240, 41 S.Ct. 79, 80-81, 65 L.Ed. 240. See infra, at note 6.
 

 [5]
 

 . For a discussion of the issue of uniformity and the application of federal as opposed to state law,
 
 see
 
 Note,
 
 The Federal Common Law,
 
 82 Harv.L.Rev. 1512 (1969); Weintraub,
 
 Commentary on the Confíict of Laws,
 
 464 — 466 (1971); 1A Moore’s Federal Practice ¶ 0.318[1]
 
 et seq.
 
 (2d Ed. 1976).
 

 Following
 
 Sampliner’s
 
 rule that we look to state law instead of creating a federal common law of champerty out of whole cloth seems consistent with the spirit of recent decisions by the Supreme Court. In
 
 Robertson v. Wegmann,
 
 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978), the Court held that 42 U.S.C. § 1988 requires as a matter of federal law that federal courts apply the Louisiana survivorship statute to determine survival of a civil rights action under 42 U.S.C. § 1983 brought in Louisiana. In
 
 Texas Industries, Inc. v. Radcliff Materials,
 
 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), the Supreme Court refused to create a federal common law of contribution for joint antitrust violators. It held that ‘contribution does not implicate “uniquely federal interests” of the kind that oblige courts to formulate federal common law.’ 451 U.S. at 642, 101 S.Ct. at 2068. We think that creation of a federal law of champerty would be equally inappropriate.
 

 Finally we note that it is not necessary for us to decide at this point whether it is the lex loci contractus, the lex loci solutionis or the forum where the parties reside which should be applied to assess the validity of the assignment since, just as in
 
 Sampliner,
 
 all of these fora are the same.
 

 [6]
 

 . Even if we were wrong in applying Louisiana state law in this case, the agreement would not be champertous on its face under generally recognized common law principles.
 

 Williston describes the relationship between champerty and maintenance and the assignment of lawsuits or choses in action as follows:
 

 Public policy opposes trafficking in lawsuits. The early common law was very reluctant to permit the assignment of rights of action. Objection was indeed raised on the ground of maintenance to the assignment of any choses in action, and for the same reason the law forbade the transfer of title to real estate which was in the adverse possession of a third person and for which, therefore, an action must be brought.
 

 So far as concerns the assignment of ordinary choses in action, for any other consideration than a share of the proceeds, or to anyone other than an attorney, the law has
 
 *606
 
 outgrown its former attitude, even though the claim is litigious.
 

 But the transfer of a claim in litigation or for the collection of which litigation is necessary, in consideration of a promised share of the proceeds of the litigation, is generally held invalid.
 

 There is a growing recognition in the cases, however, of a distinction, between
 

 1. The assignment of a claim merely for the purpose of its enforcement on a speculative basis, the assignor and the assignee agreeing to share the proceeds, and
 

 2. An assignment for a
 
 bona fide,
 
 substantial consideration.
 

 When the assignment is of the latter type, it is generally upheld even though in addition thereto the assignee promises to enforce it at his own expense and to share the proceeds with the assignor.
 

 14 Williston on Contracts § 1715 (3d Ed. 1972).
 
 Accord,
 
 Restatement of Contracts § 547(2) (1932).
 

 By the terms of the 1978 contract, Samford agrees to prosecute MTTI’s claim and pay $5,000 plus the first $53,000 of proceeds from the suit to Washington Bank, in exchange for ownership of MTTI and assignment of MTTI’s claim against the defendants. There is additional consideration present on both sides: Washington Bank receives $5,000 and Samford receives MTTI’s stock. This alone would indicate that
 
 on its face
 
 the agreement is not cham-pertous with respect to the principles just stated. Moreover, even if MTTI’s suit and not ownership of MTTI was the object Samford bargained for, and the additional consideration was a sham, the agreement still might not be champertous. It may well be that Samford, fearing that his earlier 1976 assignment of MTTI’s claim was invalid as a fraud on creditors, was attempting to settle the ownership of the claim with the Bank, who had taken control of MTTI after Shirkee Samford’s bankruptcy. Thus Samford may have been bargaining to quiet any objections by the Bank as to the earlier 1976 assignment. If so, this additional consideration would prevent the agreement from being champertous. In
 
 Sampliner v. Motion Picture Patents Co.,
 
 254 U.S. 233, 41 S.Ct. 79, 65 L.Ed. 240 (1920), a lawyer, for services for which he was willing to settle for $5,000 in cash, took an assignment of a claim for treble damages by a person injured by violation of the Sherman Act. The lawyer thought that the claim was worth at least $75,000. The United States Supreme Court held that there was a question of fact for the jury as to whether the assignment was champertous on the ground that “clearly some substantial evidence strongly tended to show that the assignment was taken in extinguishment of an existing indebtedness and not for mere speculation upon the outcome of intended litigation.”
 
 Id.
 
 at 239-240, 41 S.Ct. at 80-81. A settlement of possible claims by the Bank as regards the 1976 assignment would, like an extinguishment of indebtedness in
 
 Sampliner,
 
 provide an additional bona fide consideration which would save the agreement from invalidity as champertous.
 

 Furthermore, under common law principles, the assignee in a champertous assignment must be a stranger to the litigation.
 
 Israel Aircraft Industries, Ltd. v. Standard Precision,
 
 559 F.2d 203 (2d Cir. 1977);
 
 Kenrich Corp. v. Miller,
 
 377 F.2d 312 (3d Cir. 1967) (one who was a stockholder at the time of the alleged wrong, and, knowing of the wrong, thereafter sold his stock has in legal contemplation become a stranger to any controversy about the matter).
 

 The trial court in the present case assumed that Zarnoff Samford, having sold his stock and resigned his employment with MTTI in 1973, was thus a stranger to the litigation in 1978. However, if the 1976 assignment was valid, Samford already had an interest in the litigation at the time he entered into the 1978 agreement with Washington Bank. Without an evidentiary determination as to the validity of the 1976 agreement, the court could not have held the agreement champertous as a matter’of law, since if Samford had any interest in the litigation, the agreement could not be champer-tous.
 
 E.g., Lott v. Kees,
 
 276 Ala. 556, 165 So.2d 106 (1964);
 
 Nationwide Mutual Insurance Co. v. McNulty,
 
 229 So.2d 585 (Fla.1969);
 
 Schnabel v. Taft Broadcasting Company, Inc.,
 
 525 S.W.2d 819 (Mo.App.1975);
 
 Groce v. Fidelity General Insurance Co.,
 
 252 Or. 296, 448 P.2d 554 (1968);
 
 Ventro v. Clinchfield Coal Corp.,
 
 199 Va. 943, 103 S.E.2d 254 (1958); 14 Am.Jur.2d Champerty and Maintenance § 8 (1964); 14 C.J.S. Champerty and Maintenance § 26 (1939); 14 Williston on Contracts § 1714 (3d Ed. 1964); Restatement of Contracts § 543.
 

 Moreover, even if the 1976 assignment were not valid, and Samford had in fact no interest in the litigation, the agreement with Washington Bank would not be champertous if Sam-ford had a reasonable belief that he was interested.
 
 Kenrich Corp. v. Miller,
 
 256 F.Supp. 15 (E.D.Pa.1966),
 
 aff'd,
 
 377 F.2d 312 (3d Cir. 1967);
 
 Ames v. Hillside Coal & Iron Co.,
 
 314 Pa. 267, 272, 171 A. 610, 612 (1934); 14 C.J.S., supra; 14 Williston, supra; Restatement of Contracts § 543. Once again some sort of evidentiary hearing would have been necessary to determine this issue.