212 Pa. Superior Ct. 508 (1968)
Belfonte
v.
Miller, Appellant.
Superior Court of Pennsylvania.
Argued March 20, 1968.
June 14, 1968.
*509 Before WRIGHT, P.J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and HANNUM, JJ.
John E. Lavelle, for appellant.
Louis Cohen, for appellee.
OPINION BY SPAULDING, J., June 14, 1968:
This is an appeal from an order of the Court of Common Pleas of Schuykill County granting plaintiff's motion for judgment on the pleadings. The cause of action is in assumpsit for proceeds due under the terms *510 of a written contract[1] between plaintiff-appellee, a realtor, and defendant-appellant. The sole defense is that the contract is contrary to public policy and unenforceable.
Appellant hired appellee to make an appraisal of her real estate for the purpose of obtaining damages in previously instituted eminent domain proceedings, appellee also agreeing to testify should it prove necessary. The payment stipulated in the agreement was a designated percentage of any amount appellant received from the eminent domain proceedings plus $50[2] *511 for each day or part thereof spent by appellee offering testimony before either a Board of View or a court. Appellant ultimately received $15,000 from the Commonwealth of which appellee claims 10% plus $50 for one day's testimony.
Seeking now to avoid payment, appellant alleges that the contract is contrary to public policy as champertous or otherwise harmful to the administration of justice.
Black's Law Dictionary (4th ed.) defines champerty as a "bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject sought to be recovered." See also Jamison Coal & Coke Co. v. Goltra, 143 F. 2d 889 (8th Cir., 1944). "While there has been some relaxation in the application of the common law doctrines of champerty and maintenance in this, as well as in other jurisdictions, champerty, repugnant to public policy, is still ground for denying the aid of the court [citations omitted]. . . . `A bargain to endeavor to enforce a claim in consideration of a promise of a share of the proceeds, or of any other fee contingent on success, is illegal, if it is also part of the bargain that the party seeking to enforce the claim shall pay the expenses incident thereto' (Restatement, Contracts, section 542) unless such party (section 543) already has or reasonably believes he has an interest recognized by law in the claim." Ames v. Hillside Coal and Iron Co., 314 Pa. 267, 272, 171 A. 610 (1934). There are three distinct elements contained in each of these definitions of champerty. The party involved must be one who has no legitimate interest in the suit; he must expend his own money in prosecuting the suit; and, finally, he must be entitled by the bargain to a share in the proceeds of the suit. As restated in *512 Richette v. Pennsylvania R.R., 410 Pa. 6, 187 A. 2d 910 (1963): "A champertous agreement is one in which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense in consideration of receiving a share of what is recovered."
Viewed in this light, we find one of three necessary elements missing in the instant case: the undertaking by appellee to pay the expenses of the litigation. This precludes the contract from being held champertous.
We are, nevertheless, faced with another aspect of the contract which appellant alleges mandates its unenforceability, i.e., that it is harmful to the administration of justice. See, e.g., Restatement 2d, Contracts, §§ 540-558. Appellant asserts that the contingent fee interest of appellee follows him into the witness chair since the amount of his fee is directly related to his testimony as a witness. Appellant contends that the contingent fee agreement tends to color not only the appellee's preparation but his actual testimony as well and puts him in a position where it is in his interest to exaggerate. However honest his intentions may be and however truthful he may be, there is an obvious temptation to enlarge and overstate, and there is an open danger that such exaggeration will operate injuriously to the public.
Appellant's argument stems from a long established rule of law prohibiting certain types of contracts with witnesses. In Ramschasel's Estate, 24 Pa. Superior Ct. 262 (1904), this court stated: "It is scarcely necessary to cite authority for the proposition that the law having fixed the amount to be paid witnesses for their attendance upon court, a special contract to pay more than the regular witness fees in ordinary cases is void for want of consideration and as being against public policy. . . . The difficulties and dangers which *513 surround so-called expert testimony are well understood by the profession and it is the manifest duty of our courts to carefully scan all special contracts relating to the employment of experts, providing for the payment of special compensation in addition to the witness fees allowed by law."[3] (Emphasis added.) Although we do not necessarily share the scepticism with which the court in Ramschasel viewed expert testimony, we do concur in the concern there evidenced regarding compensation of witnesses.
A similar concern is mirrored in several recognized authorities. Section 552 of the Restatement of Contracts states: "A bargain to pay one who is subject to legal process, a sum for his attendance as a witness in addition to that fixed by law, is illegal, except as stated in Subsection (2) [which provides:] A bargain to pay an expert witness for testifying to his opinion a larger sum than the legal fees provided for other witnesses is illegal only if the agreed compensation is contingent on the outcome of the controversy." (Emphasis supplied.) Similar support can be found in Professor Corbin's work. "It is not illegal to compensate a witness who is out of the jurisdiction and not subject to subpoena, if payment is not contingent on success in the litigation or on his testifying in a specified manner. . . . A bargain to pay compensation for services such as these [special investigations by expert witnesses or otherwise for the purpose of learning *514 or determining the facts or of accumulating evidence or forming an opinion] is not illegal, always provided that payment is not contingent on success in litigation affected by the evidence or on condition that the opinions expressed or facts testified to shall be of a specified character." 6A Corbin, Contracts § 1430. Cf. In re Certain Lands in the City of New York, 128 N.Y.S. 999 (1911); Van Norden v. Metson, 171 P. 2d 485 (Cal. Dist. Ct. of App., 2d Div. 1946).
Although there is a singular paucity of precedent in our jurisdiction, the contract in the instant case is distinguishable on its face from the type of contract referred to in both the authorities and cases mentioned above, since the contracts there held unenforceable baldly compensate a witness in a manner which is held impermissible. In the instant case the witness fee is stated to be $50 per day. It is the other feature of the contract, i.e., the compensation for the preparation of the appraisal, contingent on recovery, which creates the objectionable circumstance. Our course must then be to determine whether this type of arrangement is legally distinguishable from those contracts which have heretofore been held to be unenforceable as harmful to the administration of justice.
The rule applied to such contracts is not to be affected by proof that the behavior of the parties was in fact exemplary, for it is the tendency of such contracts which serves to generate their undesirability. Improper conduct or bias can be predicted easily when the compensation of the witness is directly related to the absolute amount of an award which may in turn be dependent to a great degree on the testimony of that same witness. It could be argued that the contract involved in the instant case is distinguishable from the normal contingent fee-witness contract since it segregates the services of appellee, the objectionable *515 contingency arising only from his duties involved in the preparation of the appraisal and not from his contractual duties as a potential witness. Such an approach, however, does not in fact address itself to the actual concern of the courts in prohibiting enforcement of such contracts, for the segregation here is merely one of form, the bias feared in the preparation of the appraisal inevitably coloring, if not constituting the sole basis for, the testimony which the parties assume will follow. It is impossible to conclude, after reading the contract, that anything other than judicial proceedings were in the minds of both parties when the contract was executed, for the eminent domain proceeding had already been initiated. In a real sense, it is that fact plus the inference from the contract itself that the objective of appellant was to influence those proceedings in her favor that primarily establishes the objectionable circumstances.[4]
We hold that the application of the rule governing contingent compensation of witnesses must be extended to invalidate the instant contract.[5] The judgment on the pleadings entered by the court below is reversed *516 and the court is directed to enter judgment for defendant-appellant.
MONTGOMERY, J., would affirm on the opinion of the court below.
DISSENTING OPINION BY HANNUM, J.:
The majority hold that the contract in this case was not champertous because one of the required elements, the undertaking to pay the expenses of the litigation, was not present. The opinion also states that the plaintiff's witness fee, which was a fixed amount, $50.00 a day, was the usual and reasonable charge for such services in Schuylkill County. Therefore it was not unethical or against public policy.
However, the majority cites cases and textbooks dealing with expert witnesses who have contracted for witness fees which were contingent on the success of the litigation, and by some process of reasoning have stretched these decisions to invalidate the present contract.
A closer examination of the situation will reveal its fallacy. The defendant was under no obligation to call the plaintiff as a witness. Section 702 of the Eminent Domain Code[1] requires the condemnor to present expert testimony before the viewers, but there is no corresponding requirement as to the condemnee. The contract did not contemplate that the plaintiff must testify. It only obligated him to do so if necessary. His work of appraisal and the preparation of his report were completed prior to any hearing before the viewers and his appraisal fee had been earned, with only the amount to be determined. Had the defendant not been satisfied with his report and had gone before the viewers with some other expert, the plaintiff would still have been entitled to his compensation. The majority *517 would have to admit this because they have held that the contract was not champertous.
How then can his right to compensation be defeated by the fact that the defendant called him as a witness? That was her choice, not his. His witness fee was not contingent, and neither law nor equity can sanction her avoidance of her contract obligation by her own act. The plaintiff performed his obligations under the agreement and it comes with ill grace on her part to refuse to perform her own.
The real dissatisfaction of the defendant is revealed in her own answer to the complaint. In paragraph 6 thereof she averred: "Defendant . . . offering to pay the plaintiff the reasonable compensation at rates established by other members of the real estate profession in and about Schuylkill County. The plaintiff refused to accept such compensation." Having realized that she had made a poor bargain, she was attempting to turn a contract obligation into a quantum meruit. Having failed in this, she is now attempting to be relieved of paying anything at all, in spite of the fact that plaintiff performed acceptable services on her behalf.
I decline to accept the reasoning of the majority opinion and would affirm the judgment of the court below.
WRIGHT, P.J., joins in this dissenting opinion.
NOTES
[1] The relevant portions of which read as follows:

"2. On the 3rd day of April, 1956 eminent domain proceedings by the Commonwealth of Pennsylvania were started on the premises of the party of the second part.
3. The party of the second part is desirous of employing the party of the first part to make a complete appraisal of the damages caused by the eminent domain proceedings and, if necessary, to testify in Court, in order to obtain damages from said eminent domain proceedings.
4. The party of the second part herewith employes [sic] the party of the first part to make the appraisal and to do all things necessary, including testifying in Court for the party of the second part in order to obtain damages on the above eminent domain proceedings and agrees to pay the party of the first part as follows:
A. If the party of the second part receives either through settlement, or through litigation any sum up to Fifteen Thousand Dollars ($15,000.00), the party of the first part shall receive ten (10%) per cent of any such amount.
B. If the party of the second part receives over Fifteen Thousand Dollars ($15,000.00) either in settlement or through litigation, the party of the first part shall receive a fee of 7.5% of any amount thus received.
5. It is further agreed that if the matter is not compromised, and the matter goes either before a Board of Viewers or before a Jury, or before a Court without a Jury, the party of the first part shall also receive from the party of the second part, in addition to the amounts hereinabove set forth, the sum of Fifty Dollars ($50.00) for each day or part thereof spent before the Viewers or the Court in litigation."
[2] This figure is alleged to be the usual and reasonable charge for such services in Schuylkill County.
[3] Ramschasel's Estate, supra, was decided subsequent to the case of Wimer v. Overseers of the Poor of Worth Township, 104 Pa. 317 (1883), where the court held a contract to pay a witness extra fees for his attendance at court invalid, not because the contract was contrary to public policy, but rather on the ground that since the witness was legally obligated to perform the duty which was the substance of the contract there was no consideration for the promise to pay him for that same act.
[4] This situation is to be distinguished from that type occurring in the course of a jewelry appraisal where compensation is generally a certain percentage of the appraised value, for in those instances subsequent litigation does not provide the immediate motivation for the appraisal and success or failure in that litigation does not affect the amount of compensation, both of which elements are present in the case at bar.
[5] It is interesting to note that the Code of Ethics of the Society of Real Estate Appraisers provides: "It is unethical for an appraiser: (a) To accept an assignment to appraise a property if his employment or fee is contingent upon his supporting a predetermined conclusion. (b) To make his compensation contingent upon the amount of damages which may be decreed by the court deciding the issues from the exercise of the right of eminent domain or other similar issues." (1967 Directory of the Society of Real Estate Appraisers, at p. 19) (Emphasis added.)
[1] Act of June 22, 1964, P.L. 84, 26 PS § 1-702.