**Panitz v. Behrend**

*Eugene Mattioni* and *John F.X. Monaghan Jr.,* for plaintiff.

*Daniel Ernsberger,* for defendants.

WETTICK, *J.,* February 9, 1993—Plaintiff's preliminary objections in the nature of a demurrer to defendants' counterclaim are the subject of this opinion and order of court.

Plaintiff, Elaine B. Panitz, is a medical doctor with a specialty in occupational and environmental medicine. Defendants Kenneth W. Behrend and Barbara Behrend Ernsberger, individually and trading as Behrend and Ernsberger (Behrend attorneys), are attorneys who represented John and Alice Charney in a personal injury claim for injuries allegedly caused from exposure to formaldehyde.

Plaintiff was hired to testify as a medical expert in support of the Charney claims. She has sued to recover money allegedly due for her services. In their counterclaim, the Behrend attorneys seek damages arising out of Dr. Panitz's failure to offer expert testimony favorable to the Charneys on a very critical issue in the underlying case.

The Behrend attorneys allege that before Dr. Panitz was retained to testify on the Charneys' behalf, the Behrend attorneys discussed with her the issues for which they sought expert testimony. Their evidence would establish that the Charneys were exposed to quantities of formaldehyde of less than one part per million contained in building materials used in constructing their home. Defendants in the underlying case would contend that this exposure was not sufficient to contribute to the health problems that the Charneys were experiencing. Furthermore, even if Dr. Panitz could testify that in her opinion the health problems were caused by this exposure, she would need to be able to address the issue that defendants would raise of why smokers who are exposed to far higher levels of formaldehyde do not apparently experience similar or greater health problems than those of the Charneys.

After reviewing the medical records, Dr. Panitz advised the Behrend attorneys that she would be able to testify that in her opinion the formaldehyde contained in the building material caused the Charneys' health problems. She also referred the Behrend attorneys to testimony that she had given in an Alaska case in which she, according to the Behrend attorneys, effectively addressed the tobacco smoke exposure issue.

At the trial of the Charneys' claim, Dr. Panitz gave her opinion that the formaldehyde in the building materials caused the Charneys' health problems in the manner in which the Behrend attorneys anticipated. However, when

defendants' counsel asked her to explain why persons exposed to tobacco smoke do not experience similar reactions to formaldehyde, she testified that she could not offer an explanation.

In the underlying case, the jury returned a verdict in favor of the defendants. The Behrend attorneys allege that Dr. Panitz's failure to give the testimony that she previously had given in the Alaska case on the smoke exposure issue was a substantial factor for the unfavorable jury verdict. The Behrend attorneys have raised claims based on breach of contract, negligence, misrepresentation, and gross negligence in which they seek the lost attorneys' fees they would have recovered if the Charneys had prevailed or, alternatively, the hours worked (439.9 hours) after Dr. Panitz advised the Behrend attorneys of the testimony that she would be able to offer.

The Behrend attorneys do not allege that Dr. Panitz testified falsely at the trial or that she deliberately withheld testimony because of malice or fraud. It is their contention that she either negligently or intentionally misrepresented to the Behrend attorneys that there was a medical or scientific basis to support her Alaska testimony, that she failed adequately to prepare for trial, or that she breached a duty to inform the Behrend attorneys that she no longer had confidence in the opinions that she had earlier stated or implied.

From early times, the common law has barred civil actions based on statements made in court proceedings so that witnesses can give complete and truthful testimony without fear of retaliatory litigation. Pennsylvania has consistently followed the common law. See *Kemper v. Fort*, 219 Pa. 85, 67 A. 991 (1907); *Greenberg v. Aetna Insurance Co.*, 427 Pa. 511, 514, 235 A.2d 576, 577 (1967); *Binder v. Triangle Publications Inc.*, 442 Pa. 319, 323-24, 275 A.2d 53, 56 (1971).

In *Clodgo by Clodgo v. Bowman,* 411 Pa. Super. 267, 601 A.2d 342 (1992), a mother sued to recover the child support that she should have been awarded in support proceedings. In the initial support proceeding, Dr. Bowman had been appointed by the court to conduct blood tests. He sent a letter to the court which stated that the blood tests established that the person whom the mother had sued could not be the child's biological father. On the basis of that statement, the court dismissed the support action. It was subsequently determined that Dr. Bowman had improperly recorded the blood test results, thereby erroneously excluding the defendant as the father. The mother instituted a second support action which was dismissed when the defendant raised res judicata as a defense. The mother, on behalf of herself and her child, then instituted a civil proceeding against Dr. Bowman based on medical malpractice. The trial court granted the doctor's preliminary objections in the nature of a demurrer on the basis of an absolute testimonial privilege for communications made in connection with judicial proceedings. The Superior Court affirmed.

In response to the argument of the mother's counsel that the privilege should be limited to defamation actions, the Superior Court said:

"Our precedent is clear. The form of the cause of action is not relevant to application of the privilege. Regardless of the tort contained in the complaint, if the communication was made in connection with judicial proceedings and was material and relevant to it, the privilege applies. Thus, while we agree with appellant's premise that this action is not premised upon defamation but is a medical malpractice action, this does not alter the conclusion that the privilege applies." *Id.* at 273, 601 A.2d at 345.

Also see *Moses v. McWilliams,* 379 Pa. Super. 150, 164, 549 A.2d 950, 957 (1988), where the Superior Court stated, "While it is true that immunity from civil liability in judicial proceedings has been applied most frequently in defamation actions, many courts, including those in Pennsylvania, have extended the immunity from civil liability to other alleged torts when they occur in connection with judicial proceedings."

It is irrelevant that in the case before me the witness was an expert retained by a party rather than a court-appointed expert. In both instances, the just resolution of the claim depends upon the expert giving complete and honest testimony without fear of adverse financial consequences.[*]

In *Belfonte v. Miller,* 212 Pa. Super. 508, 243 A.2d 150 (1968), a real estate appraiser whom a property owner hired to provide expert testimony on the property owner's behalf in an eminent domain proceeding sued the property owner to enforce provisions of the agreement between the parties that provided for the expert to receive a designated percentage of any amount that the property owner received. The property owner sought to avoid payment on the ground that the portion of the contract providing for a percentage of the award violated public policy. The Pennsylvania Superior Court agreed and invalidated the contract. It did so because "[i]mproper conduct or bias can be predicted easily when the compensation of the witness is directly related to the absolute amount of an

---

[*] Rule 3.4(b) of the Rules of Professional Conduct provides that a lawyer may not make the compensation of an expert witness contingent upon the content of the witness's testimony or the outcome of the case.

award which may in turn be dependent to a great degree on the testimony of that same witness." *Id.* at 514, 243 A.2d at 153. The court rejected the appraiser's argument that the contract was not harmful to the administration of justice because the contingent fee portion governed the fees involved in preparing the appraisal rather than the contractual duties as a witness, because:

"Such an approach, however, does not in fact address itself to the actual concern of the courts in prohibiting enforcement of such contracts, for the segregation here is merely one of form, the bias feared in the preparation of the appraisal inevitably coloring, if not constituting the sole basis for the testimony which the parties assume will follow. It is impossible to conclude, after reading the contract, that anything other than judicial proceedings were in the minds of both parties when the contract was executed, for the eminent domain proceeding had already been initiated. In a real sense, it is that fact plus the inference from the contract itself that the objective of appellant was to influence those proceedings in her favor that primarily establishes the objectionable circumstances." *Id.* at 515, 243 A.2d at 154.

It makes no difference whether the inducement is the opportunity to make a larger fee as in *Belfonte v. Miller* or to avoid suit brought by a disappointed litigant as in this case. In both instances, an expert would have a financial incentive to offer testimony which is not accurate and complete.

My ruling is consistent with case law in other jurisdiction. In *Griffith v. Harris,* 116 N.W.2d 133 (Wis. 1962), the unsuccessful plaintiff in an underlying medical malpractice claim brought a breach of contract claim against physicians who had allegedly agreed to give favorable medical evidence against another physician. The

plaintiff alleged that his malpractice claim was dismissed because the defendant-physicians first agreed to testify on plaintiff's behalf, then subsequently advised plaintiff that they would not testify in a way that would benefit plaintiff, apparently at a time when plaintiff could not offer a substitute witness. The basis of the lawsuit, according to the Wisconsin Supreme Court, was the physicians' unwillingness to give favorable medical evidence which resulted in the dismissal of plaintiff's claim at the close of plaintiff's case. The court dismissed the lawsuit on public policy grounds:

"A litigant and a prospective witness may lawfully contract between themselves that the latter will appear at a trial; the breach of such contract would give rise to the damages which reasonably flow from a witness's failure to appear. This might include the expenses involved in seeking a substitute witness or perhaps the costs incurred in procuring a postponement of the trial. However, a contract creating an obligation not only to appear but also to testify in a certain manner on behalf of a party to a lawsuit is against public policy." *Id.* at 135.

In *Curtis v. Wolfe,* 513 N.E.2d 1139 (Ill. App. Ct. 1987), the plaintiff sued a treating physician who allegedly violated his agreement to testify favorably to plaintiff in the underlying medical malpractice action. The court, citing *Griffith v. Harris, supra,* dismissed the claims against the physician because:

"The *Griffith* case indicates parties may lawfully contract between themselves that a doctor will appear and testify at trial and we believe that a contract creating any further obligation with regard to the type of testimony falls within the parameters of *Griffith* as against public policy." *Curtis v. Wolfe,* 513 N.E.2d at 1142.

For these reasons, I enter the following

## ORDER OF COURT

On this, February 9, 1993, it is hereby ordered that plaintiff's preliminary objections to defendants' counterclaim are sustained and this counterclaim is dismissed. Arbitration hearing is rescheduled for April 5, 1993.