Alan FRANK, Appellant

v.

Laurie C. TEWINKLE and Anthony J. Sciarrino, Appellees.

Alan Frank, Appellant

v.

James Stuczynski and Bruce W. Bernard, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 15, 2012.

Filed May 22, 2012.

Alan Frank, appellant, pro se.

Gregory J. Norton, Pittsburgh, for Bernard, appellee.

Patrick M. Carey, Erie, for TeWinkle, appellee.

BEFORE: BOWES, OLSON and PLATT,* JJ.

OPINION BY OLSON, J.:

In this consolidated appeal, Appellant, Alan Frank, appeals from the trial court orders entered June 21, 2011, sustaining the preliminary objections filed by Appellees, James J. Stuczynski and Bruce W. Bernard, and the preliminary objections filed by Appellees, Laurie C. TeWinkle and Anthony J. Sciarrino. For the following reasons, we affirm.

The trial court summarized the applicable factual and procedural background of this matter as follows:

The instant matter stems from two separate lawsuits filed by [Appellant], both alleging breach of contract. [Appellant] admits to being a former Pennsylvania attorney whose license has been suspended since July 15, 1988. Through an advertisement for Overcharge Recovery Co., [Appellant] solicited the assignment of the claims of Arthur Voorhis (13524–2010) and Kenneth and Alexis Plonski (13585–2010) [against their former personal injury attorneys].[1] Following the assignments, [Appellant] initiated these lawsuits alleging [Appellee] [a]ttorneys breached their contract[s] with their clients by making unauthorized disbursements from settlements for attorney fees.

[Appellees] allege [Appellant] is engaged in the unauthorized practice of law as evidenced by the advertisement and the "Assignment of Claims and Choses in Action" in which [Appellant] agrees to pay the assignors a percentage of the net proceeds recovered in the instant matters.[2]

---

* Retired Senior Judge assigned to the Superior Court.

1. Specifically, the solicitation to which Mr. Voorhis and the Plonskis responded represented to injury victims that if their attorneys took more than 25% of the recovery received as a result of their injury, they "got robbed." Mr. Voorhis was represented by Appellees TeWinkle and Sciarrino in his personal injury case. Mr. and Mrs. Plonski were represented by Appellees Stuczynski and Bernard in their personal injury case.

2. The written agreement between Appellant and Mr. Voorhis provides that Mr. Voorhis (identified in the agreement as "victim") would sell, assign and transfer all of his "right, title and interest in any and all claims, causes or choses in action that VICTIM might have, against any person, firm or corporation that received any portion of the proceeds of [any] settlement/verdict/judgment" that Mr. Voorhis obtained in his underlying personal injury claim. Appellant's Brief, Exhibit C. As consideration for this assignment, Appellant paid Mr. Voorhis $250.00. *Id.* Moreover, the document provides that "[a]s a separate agreement," Mr. Voorhis is to serve as "an independent contractor" to provide Appellant "with information, cooperation and assistance" in Appellant's prosecution of the case against Mr. Voorhis' lawyers. In turn, Appel-

[Appellees] Sciarrino and Te[W]inkle filed [p]reliminary [o]bjections alleging [Appellant's] failure to attach a copy of the [a]ssignment and the settlement disbursement documents is in violation of Pa.R.C.P. No. 1019(i). [Appellees] Sciarrino and Te[W]inkle also allege [Appellant] has a lack of capacity to sue and the claims filed by [Appellant] constitute champerty and as such must be dismissed.

[Appellees] Bernard and Stuczynski filed [p]reliminary [o]bjections alleging [Appellant] failed to attach a copy of the [a]ssignment, the written contract [between Bernard and Stuczynski and their clients,] and the disbursement agreements. [Appellees] also allege [Appellant] cannot establish a breach of contract, [Appellant's] claim is champertous and void as against public policy, Pennsylvania law does not support this type of assignment and [Appellant] is not entitled to punitive damages.

Trial Court Opinion, 6/21/2011, at 1–2.

On June 21, 2011, the trial court issued an opinion and orders granting both sets of preliminary objections and dismissing Appellant's complaints. This timely appeal followed.[3]

Appellant presents five issues for review:

1. When ruling on preliminary objections, must the court disregard all allegations of fact made by the defendant, and accept as true all allegations of fact in the amended complaint?

2. Does the assignee of causes of actions against attorneys become the sole real party in interest when he pays valuable consideration in exchange for the irrevocable assignment of exclusive total ownership of said causes of action and the assignors relinquish all their rights in said causes of action?

3. Are provisions in assignments that enable assignors of causes of action to share revenues with assignees grounded for voiding the assignments?

4. Do the amended complaints describe champertous activity as a matter of law?

5. Should venue be changed upon remand where the lower court delayed eight months before ruling upon preliminary objections, and filed a false report concerning its 90 day old cases, and where the Appellant filed a complaint under PA R.J.A. 703 with the judicial conduct board because of said delay?

Appellant's Brief at 3.

Appellant's first four issues on appeal challenge the trial court's order sustaining Appellees' preliminary objections in the nature of a demurrer, holding that the assignments upon which Appellant's breach of contract claims are based are

---

lant agreed to pay Mr. Voorhis "for said cooperation services an amount equal to 25% of the net proceeds [Appellant] recovers" in his lawsuit against Mr. Voorhis' attorneys. *Id.* The written agreement between Appellant and the Plonskis is virtually identical to the agreement between Appellant and Mr. Voorhis except that Appellant agreed to pay Mr. and Mrs. Plonski 33 1/3% of the net proceeds Appellant recovered in his suit against the Plonskis' attorneys in exchange for the

Plonskis' "cooperation services." Appellant's Brief, Exhibit F.

3. The trial court did not require Appellant to submit a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). On July 29, 2011, the trial court issued its Rule 1925(a) opinion within which it relied upon and incorporated its opinion issued on June 21, 2011.

champertous. We therefore consider all four of those issues together.

■■■ In considering an appeal of an order granting preliminary objections in the nature of a demurrer, our standard of review is *de novo* and our scope of review is plenary. *Mazur v. Trinity Area Sch. Dist.*, 599 Pa. 232, 961 A.2d 96, 101 (2008).

> The court may sustain preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief. For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts.

*Id.* (internal citations omitted).

■■■ In this matter, the trial court explained that the common law doctrine of champerty remains a viable defense in Pennsylvania. Applying that doctrine to the assignments at issue in these cases, the trial court sustained Appellees' preliminary objections, finding that the agreements between Appellant and the assignors of the claims were champertous. Furthermore, the trial court reasoned that, because the underlying agreements were champertous, Appellant is not a real party in interest pursuant to Pennsylvania Rule of Civil Procedure 2002. Consequently, the trial court sustained the two sets of preliminary objections in the nature of a demurrer and dismissed both complaints.

Long considered repugnant to public policy against profiteering and speculating in litigation, champerty is defined by Black's Law Dictionary (8th ed.) as:

> [a]n agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds; ... an agreement to divide litigation proceeds between the owner of the litigated claim and a party unrelated to the lawsuit who supports or helps enforce the claim.

*See also Richette v. Pennsylvania R.R.*, 410 Pa. 6, 187 A.2d 910 (1963) (a champertous agreement is "one in which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense in consideration of receiving a share of what is recovered."); *Belfonte v. Miller*, 212 Pa.Super. 508, 243 A.2d 150, 152 (1968) (en banc) (citing Black's Law Dictionary and defining champerty as "a bargain by a stranger with a party to a suit, by which such third person undertakes to carry on the litigation at his own cost and risk, in consideration of receiving, if successful, a part of the proceeds or subject to be recovered[ ]") (internal quotation omitted).

■■■ "While there has been some relaxation in the application of the common law doctrine of champerty and maintenance in this, as well as other jurisdictions," we reiterate our Court's holding that "champerty ... is still ground for denying aid of the court." *Belfonte*, 243 A.2d at 152; *see also Westmoreland County v. RTA Group, Inc.*, 767 A.2d 1144, 1149 (Pa.Cmwlth.2001) (affirming the trial court's grant of summary judgment as to count one of the complaint in favor of the plaintiff because the defendant consulting group was engaged in champerty and maintenance).

■■■ Under Pennsylvania law, if an assignment is champertous, it is invalid. *Belfonte*, 243 A.2d at 152. An assignment is champertous when the party involved: (1) has no legitimate interest in the suit, but for the agreement; (2) expends his own money in prosecuting the suit; and (3)

is entitled by the bargain to share in the proceeds of the suit. *Id.*

In the instant matter, the trial court considered each of the above elements and concluded that the written assignments upon which Appellant sought to pursue claims against Appellees were champertous, and therefore invalid. We agree. First, Appellant acquired the assignments from the clients in the underlying suits by paying cash for them. There is nothing in the record indicating that Appellant had any direct interest in the underlying suits, and Appellant does not allege otherwise. Therefore, absent these assignments, Appellant has no legitimate interest in the suits brought against Appellees. Second, Appellant is using his own money to finance the suits, as he is the *pro se* plaintiff and is therefore responsible for filing fees and other associated costs. Third, review of the assignments evidences that both give Appellant an interest in a percentage of the proceeds of the suit. Therefore, both assignments are champertous.

Appellant, however, challenges the trial court's application of champerty, arguing that the assignments at issue in this matter are legally permitted and therefore not champertous. Appellant's Brief at 9–12. In support of that argument, Appellant relies primarily upon our Supreme Court's decision in *Hedlund Mfg. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357 (1988).

In *Hedlund,* Mervin Martin engaged the services of attorney Karl Spivak to apply for a patent on a manure spreader that Martin had invented and manufactured. *Hedlund,* 539 A.2d at 357. Spivak prepared the application, but failed to file it within the required amount of time. *Id.* at 357–358. Hedlund Manufacturing Company, Inc., purchased Martin's business, including the right to use and license the then pending patent. *Id.* at 358. The

patent, however, was eventually disallowed. *Id.* Martin then assigned to Hedlund "all rights and causes of action, against [Spivak] arising out of the mishandling of the patent application." *Id.* Thereafter, Hedlund filed a complaint alleging professional negligence and breach of contract against Spivak and his law firm. *Id.*

On appeal, the Supreme Court considered "whether a cause of action for negligence and breach of contract with respect to the performances of legal services can be assigned." *Id.* at 357. Within its reasoning, the Supreme Court recognized that in several jurisdictions, courts have determined that public policy prohibits the assignment of such claims to protect the attorney-client relationship. *Id.* at 359. Nevertheless, the Supreme Court approved the assignment of legal malpractice claims, holding that "[w]e will not allow the concept of the attorney-client relationship to be used as a shield by an attorney to protect him or her from the consequence of legal malpractice." *Id.*

In reliance upon *Hedlund,* Appellant argues that, because Pennsylvania law permits the assignment of legal malpractice claims, so long as the underlying claims against Appellees are allegedly meritorious, the assignments are valid. Appellant's Brief at 9. Nothing in the Supreme Court's holding in *Hedlund,* however, determined that an assignment of claims against attorneys cannot be champertous, or that champerty is no longer a viable defense to such claims. To the contrary, unlike the assignments in this matter, the assignment in *Hedlund* was not champertous.

Specifically, in *Hedlund* the assignee (Hedlund Mfg.) was not a stranger to the litigation and it held a legitimate interest in the lawsuit. Indeed, Hedlund purchased Martin's business, including the

rights to use and license a pending patent. Consideration paid by Hedlund in this transaction included a value that reflected Hedlund's interest in the viable patent for Martin's manure spreader. Therefore, Hedlund was directly affected by and had a significant interest in the outcome of the patent application proceedings. Attorney Spivak, however, improperly handled those proceedings. Therefore, although Hedlund did not contract directly with Attorney Spivak for the patent application services, Hedlund, whose interest in the viable patent rights for Martin's maneuver spreader arose from its acquisition of Martin's business, held a legitimate interest in the suit against Spivak and his firm.

■ In this matter, however, Appellant has no legitimate interest in the underlying personal injury actions. Indeed, Appellant was and still remains a "stranger" to those lawsuits. Appellant's only interest in the underlying matters arose well after the matters were complete, when, upon solicitation, Appellant purchased assignments with the exclusive intent to institute claims against the assignors' attorneys in consideration of which Appellant agreed to share in a percentage of the recovery. Therefore, unlike in *Hedlund*, Appellant in this matter is in fact an "intermeddler [seeking to] pursue the litigant's claim as consideration for receiving part of any judgment proceeds." Consequently, we conclude that, contrary to Appellant's argument, while claims against attorneys may be assigned under Pennsylvania law, champerty is still a viable defense to those claims.

■ Appellant also argues that champerty should not be recognized in this situation because, according to Appellant, the assignments at issue in this matter are

similar to revenue sharing arrangements between a creditor and a collection agency. Appellant's Brief at 12–13. In support of this argument, Appellant cites to a federal case wherein the United States Supreme Court determined that assignees had standing under Article III of the United States Constitution to pursue their claim in federal court. *See id., citing Sprint Communications Co., L.P. v. APCC Services, Inc.*, 554 U.S. 269, 128 S.Ct. 2531, 171 L.Ed.2d 424 (2008).

We, however, disagree with Appellant's comparison to debt collection practices and remind Appellant that revenue sharing is only one element of a three-part test for champerty, which remains a valid defense in Pennsylvania state court actions.[4] Simply stated, where, as in this matter, an assignment fits all three of the elements of champerty, the champertous agreement will be found invalid. *Belfonte*, 243 A.2d at 152.

■ Finally, Appellant argues that the assignments at issue in this matter are distinguishable from those in Pennsylvania precedent addressing champerty because, in this matter, the assignments gave Appellant "exclusive total ownership of a cause of action." Appellant's Brief at 14 (emphasis omitted). According to Appellant, "[w]hen an irrevocable transfer of exclusive total ownership of a cause of action occurs in exchange for valuable consideration, the activity is not champertous." *Id.* at 16.

Appellant's argument in this regard is flawed for several reasons. First, the public policy concerns upon which champerty is based are not solved by an "irrevocable transfer of exclusive total ownership." Champerty seeks to prohibit profiteering

---

4. Furthermore, we note that debt collection agencies engage in collection activities, they do not initiate and litigate new lawsuits. As a result, the activities between a creditor and a collection agency have nothing to do with champerty.

and speculating in litigation. Such repugnant actions are not eliminated by an exclusive assignment.

Furthermore, our review of the record indicates that Appellant overstates the "exclusive" nature of the assignments in this matter. Indeed, while the assignments purchased by Appellant attempted to assign Appellant exclusive right to the recovery received from lawsuits filed against Appellees, those assignments also promised Mr. Voorhis and the Plonskis a percentage of the amounts recovered. Therefore, pursuant to the express language of the written agreements, the assignments did not grant Appellant "exclusive total ownership" of the causes of action.

Therefore, in summary, we agree with the trial court's determination that, under Pennsylvania law, champerty remains a valid defense, that the defense of champerty can apply to assignments of breach of contract claims against attorneys, and that the assignments in the instant matter are, indeed, champertous and therefore invalid. Having found that the assignments in this matter are champertous, we affirm the trial court's orders sustaining Appellees' preliminary objections in the nature of a demurrer. Furthermore, having affirmed the preliminary objections on that basis, we need not consider Appellant's remaining issue on appeal.

Orders affirmed.