J-A12014-16

2016 PA Super 209

| | |
|---|---|
| WFIC, LLC<br><br>v.<br><br>DONALD LABARRE, JR., ESQUIRE, PAFCO INVESTMENTS LLC AND PETER FERENTINOS AND MILTON MARTINEZ AND DEBORAH KOCHER AND POLYMER DYNAMICS, INC. AND BRAD JACOBY AND WILLIAM PEOPLES AND CAROLYN PEOPLES AND ABRAHAM BARTH AND DUANE PEOPLES AND DAN KACMAR AND SCOTT PEOPLES AND CRAIG PEOPLES AND JOSEPH ROCK AND CLIFFORD O'HEARNE AND ARTHUR PEOPLES AND ELIZABETH HUGGETT AND STANLEY STAFFELD AND PETER STAFFELD AND RICHARD PEITER<br><br>APPEAL OF:  BRUCE MCKISSOCK, ESQUIRE | IN THE SUPERIOR COURT OF PENNSYLVANIA<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 1985 EDA 2015 |

Appeal from the Order Entered May 11, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): Civil Action No. 03183 Sep. Term, 2011

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

OPINION BY BENDER, P.J.E.:                 **FILED SEPTEMBER 13, 2016**

Appellant, Bruce McKissock, Esquire, appeals from the order entered

on May 11, 2015,[1] granting supplemental motions for summary judgment in

---

[1] In his Notice of Appeal, Appellant indicates that he is also appealing from "the Orders and/or Opinions adopted and incorporated by reference in the Opinion dated May 11, 2015, including but not limited to the Orders and/or Opinions dated November 7, 2013 (misidentified as November 3, 2013), July 18, 2014, and January 12, 2015, and from all prior adverse Orders and
*(Footnote Continued Next Page)*

*Former justice specially assigned to the Superior Court.

favor of moving Appellees[2] and dismissing Appellant's remaining cross-claim for unjust enrichment against Appellees. After careful review, we affirm.

As the trial court noted in its Pa. R.A.P. Rule 1925(a) opinion, "[t]his matter has a long and circuitous history in which [Appellant's] cross[-]claim for unjust enrichment remains the only claim left in this litigation." Trial Court Opinion, 5/11/15, at 1.[3] The underlying litigation in this case dates back to 1999, when Polymer Dynamics, Inc. (hereinafter "PDI") filed a lawsuit against Bayer Corporation in the Eastern District of Pennsylvania (hereinafter "Bayer Litigation").[4] PDI was represented by Appellant at the trial level during the Bayer Litigation.[5] The record indicates that PDI

_____
(Footnote Continued)

rulings made final by entry of the Order and Opinion dated May 11, 2015, which dismissed the final claim pending in the trial court." Appellant's Notice of Appeal, 6/9/15, at 1-2.

[2] Motions for Summary Judgment were filed by the following Appellees: PAFCO Investment LLC (hereinafter "PAFCO"), Peter Ferentinos (majority shareholder and President of PAFCO), and William Peoples, Debbie Kocher, Craig A. Peoples, Duane Peoples, Brad Jacoby, Dan Kacmar, Milthon Martinez, Jessica Moran, Joseph Rock, Peter Staffeld, Elizabeth Huggett, Arthur Peoples, Scott Peoples, and Stanley Staffeld (hereinafter "Litigation Fund Investors").

[3] Herein, we refer to multiple trial court opinions, all of which will be referred to by the abbreviation "TCO" followed by the date of the opinion.

[4] *Polymer Dynamics, Inc. v. Bayer Corp.*, No. 99-4040, 2007 WL 2343796, at *1 (E.D. Pa. Aug. 1, 2007), *aff'd in part, vacated in part*, 341 F. Appx. 771 (3d Cir. 2009).

[5] On February 2, 2004, PDI entered into an engagement letter with the firm of McKissock & Hoffman ("M&H") for representation in the Bayer Litigation. Appellant was President of M&H and signed the engagement letter with PDI
(Footnote Continued Next Page)

expected recovery in the amount of at least $100 million.[6]  TCO, 11/7/13, at

1.  However, on June 24, 2005, the jury issued a verdict in favor of PDI in

the amount of $12.5 million.  "Dissatisfied with the outcome, both parties

appealed the award."  TCO, 5/11/15, at 3.  "PDI did not have the financial

resources to continue the lengthy litigation and thus solicited investors

willing to advance money into a litigation fund [i.e. the Litigation Fund

Investors] … in exchange for promissory notes."  TCO, 8/14/14, at 1.

In addition to the Litigation Fund Investors, PAFCO also made several

loans to assist PDI in funding the Bayer Litigation.  TCO, 5/11/15, at 2.  As

explained in detail by the trial court in a related case:

> [O]n or about September 1, 2004, PAFCO had begun funding
> PDI through a series of loans.  Additionally, PAFCO lent
> $991,140.00 to PDI through the PDI litigation fund….  Moreover,
> PAFCO obtained valid security interests for the debt in 2004 and
> 2008.  Specifically, in 2004, PAFCO acquired the assignment of a
> 1999 UCC-1 security interest in PDI's assets (hereinafter "2004
> secuity interest").  The 2004 security interest was assigned to
> PAFCO on October 6, 2004 and secured until December of
> 2014….  Additionally, PAFCO received another security interest in
> 2008 (hereinafter "2008 security interest") which continued
> through 2018.

*(Footnote Continued)* ────────────

on behalf of M&H.  In September 2007, the firm of M&H dissolved, and
Appellant became employed at Marshall, Dehenney, Coggin and Werner.
Appellant personally entered a new fee agreement with PDI dated October 1,
2007.

[6] "PDI alleged that Bayer machinery, for which PDI relied upon to maintain
its business, had malfunctioned, resulting in PDI's insolvency.  The complaint
also included allegations of fraud, breach of fiduciary duty, misappropriation
of confidential information, unfair competition, and breach of disclosure
agreement."  TCO, 11/7/13, at 1, n.6.

Appellant's Brief at Appendix C (quoting the Trial Court Opinion issued on 8/14/14, at 2 in **Grimes v. Polymer Dynamics, Inc., et al.** (No. 00675 of November Term, 2011)) (citations to the record set forth in **Grimes** omitted).

On or about August 28, 2008, Appellant entered into an amended fee agreement with PDI ("2008 Fee Agreement"), which converted his original 7.5% contingency fee into a 1/3 contingency fee, "with the understanding that the Litigation Fund Investors would be paid from Appellant's increased contingency fee…." Appellant's Brief at 6. The jury verdict of $12.5 million was affirmed by the Third Circuit Court of Appeals in 2009. TCO, 5/11/15, at 3. On September 30, 2010, Bayer paid the verdict amount plus post-judgment interest totaling $14,412,765.65, and deposited the funds into an escrow account with Gross McGinley, LLP.[7] **Id.** PDI then authorized Gross McGinley, LLP to distribute the funds to pay taxes owed to the IRS, the Commonwealth of Pennsylvania, and the City of Allentown, as well as legal fees owed to Gross McGinley, LLP and Bochetto & Lentz, P.C. **Id. See also** TCO, 11/6/14, at 2. The balance remaining in escrow after paying taxes and legal fees was insufficient to pay the full amount of the secured debt owed to

---

[7] In early 2009, prior to the decision of the Third Circuit Court of Appeals in the Bayer Litigation, Appellant withdrew as counsel for PDI due to a conflict of interest. PDI later hired the law firm of Gross, McGinley, LaBarre and Eaton (Gross McGinley, LLP) for the purpose of collecting the jury award. *Pro Se* Appellee's Brief (Deborah Kocher and William Peoples) at 15, 17.

PAFCO.[8]  Thus, PAFCO agreed to reduce the balance it was owed and to accept the remaining escrow balance as payment in full of its debt.  TCO, 11/6/14, at 2.  Upon receipt of the funds, PAFCO chose to disburse funds to numerous Litigation Fund Investors in an effort to avoid future litigation.[9]  *Id.*  Appellant did not receive any payment for attorney fees incurred in the Bayer Litigation.  TCO, 5/11/15, at 4.

On September 27, 2011, WFIC, LLC ("WFIC")[10] instituted this action with the filing of a complaint alleging unlawful distribution of the litigation proceeds, unjust enrichment, and seeking a determination that WFIC had first priority rights to the proceeds.  *See* WFIC's Complaint, 9/27/11.  On July 12, 2012, Appellant filed an Answer with New Matter asserting the following cross-claims:  Count I – Breach of Contract against PDI; Count II – *Quantum Meruit* against PDI; Count III – Unjust Enrichment against William Peoples,[11]  Peter  Ferentinos,  PAFCO,  and  individual  Litigation  Fund

---

[8] On August 14, 2014, the trial court ruled in the related **Grimes** case that PAFCO was the senior secured creditor of PDI at the time the judgment was satisfied in the Bayer Litigation.

[9] PAFCO negotiated with individual Litigation Fund Investors for the payment of principle only, excluding interest and incentive due under the 2008 Fee Agreement.  *Pro Se* Appellee's Brief (Deborah Kocher and William Peoples) at 19.

[10] Larry Martin, a creditor of PDI, assigned his rights to the Bayer Litigation proceeds to WFIC.

[11] William Peoples was the majority shareholder and President of PDI.

Investors[12]; Count IV – Seeking Declaratory Judgment; Count V – Request for Accounting against all named defendants in Count III; Count VI – Cross-Claims pursuant to Pa.R.C.P. 1031.1 against PDI, William Peoples, Peter Ferentinos, and PAFCO.

After extensive litigation, the trial court ruled that WFIC did not have a perfected security interest in the proceeds of the Bayer Litigation and, therefore, did not maintain priority over other secured creditors. TCO, 11/7/13, at 7. Following the entry of this order, Appellant's cross-claims remained pending and multiple cross-claim defendants filed supplemental motions seeking summary judgment against Appellant. The trial court granted summary judgment in favor of PAFCO and Peter Ferentinos with respect to Counts V and VI of Appellant's cross-claim. Additionally, the supplemental motions filed by cross-claim defendants Fred Appelgate Trust, Bruce Evans, William B. Fretz, Richard Hansen, Anthony W. Hitschler, and Holly Zug Trust, were dismissed as moot due to an agreement to enter into mutual releases. Trial Court Order, 5/11/15, at 1. All other pending claims for unjust enrichment were granted in favor of the remaining cross-claim

---

[12] Appellant named the following Litigation Fund Investors individually as cross-claim defendants: Fred Appelgate Trust, Bruce Evans, William B. Fretz, Richard Hansen, Jackie Herbst, Anthony W. Hitschler, Elizabeth Huggett, Brad Jacoby, Dan Kacmar, Debbie Kocher, Milthon Martinez, Joseph McHale, Jessica Moran, Clifford O'Hearne, Arthur Peoples, Craig Peoples, Duane Peoples, Scott Peoples, Richard Reiter, Joseph Rock, Peter Staffeld, Stanley Staffeld, and Holly Zug Trust.

defendants and Appellant's cross-claim for unjust enrichment was dismissed in its entirety. *Id.*

Subsequently, Appellant filed a timely Notice of Appeal dated June 9, 2015. Herein, Appellant presents the following statement of questions involved:

1. Was [Appellant's] right to payment of his legal fees from the Bayer award superior to PAFCO's rights to the award[?]

2. Did [Appellant] have a valid charging lien on the Bayer award[?]

3. Does [Appellant] have standing to assert unjust enrichment claims against Appellees[?]

4. Did the disputed investors directly benefit from [Appellant's] legal services rendering them liable for unjust enrichment[?]

5. Did [Appellant's] right to recover attorneys' fees from the Bayer award have priority over all payments made to persons who were not legitimate litigation fund investors[?]

Appellant's Brief at 4.

Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is well-settled:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a

non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***Thompson v. Ginkel***, 95 A.3d 900, 904 (Pa. Super. 2014) (citations omitted).

To begin, we address the issue of whether Appellant had a valid charging lien on the award in the Bayer Litigation. The 2008 Fee Agreement upon which Appellant bases his claim provides in pertinent part as follows:

NOW THEREFORE, in consideration of [Appellant's] agreement to continue prosecution of this litigation, it is hereby agreed and intended between the parties on the following fee arrangement:

1. Based on the current award of $12.5 Million, plus accrued interest, [Appellant] shall be entitled to a 1/3 gross legal fee;

2. From the 1/3 gross legal fee, for and in consideration of loan accommodations in an amount of up to Three Million Dollars ($3,000,000.00) to the [PDI] Litigation Fund, [Appellant] has agreed to pay principal, interest and incentive to the [PDI] litigation fund note holders, as [i]dentified.

   a. This payment has priority over any and all other payments and will be paid prior to any payment to [Appellant] under this fee arrangement with PDI or payment of obligations under the March 1, 2005 Revised Fee Agreement with M&H.

   …

4. The firm of M&H shall subordinate its right to repayment of their expenses and its right to receive its contingent fee interest in the $12.5 Million Verdict to the payout of the PDI Litigation Fund expense. Once the PDI litigation fund expenses are satisfied, any remaining portion of the 1/3 gross legal fee on the $12.5 Million Verdict will be allocated to reimburse M&H for expenses advanced and to the payment of

M&H's contingency fee agreement (the March 1, 2005 Revised Fee Agreement) in that Verdict.

5. In regards to any tax liens, the balance of the award recovery, net of the attorney fees/litigation fund payments, would exceed any pending tax lien.

6. If no further recovery is obtained, then [Appellant] will receive no further compensation for the legal services he has rendered in this matter. However, PDI shall be responsible for reimbursement of out-of-pocket costs advanced by [Appellant].

…

8. This Agreement constitutes the entirety of the Amended and Restated Fee Agreement entered into between PDI, [Appellant] and M&H, and the terms and conditions of this Agreement shall be controlled by applicable Pennsylvania law. Any dispute regarding payment of fees or reimbursement of costs on this matter shall be resolved by binding arbitration between the parties.

TCO, 5/11/15, at 2-3.

Appellant argues that the 2008 Fee Agreement created a charging lien, which entitled him to a security interest in the Bayer Litigation proceeds, and that PAFCO and other creditors of PDI should have been paid only after he had been paid. Appellant's Brief at 15, 19. However, as the trial court previously explained in the related **Grimes** matter:

[T]his court is wary of allowing an attorney charging lien to proceed in this fashion as it is contrary [to] public policy. Attorney charging liens create priority over other creditors. Attorney charging liens are enforced to ensure that attorneys are paid for work performed, not for creditors to secure priority…. Potentially, if allowed to proceed, attorneys could create charging liens to defraud creditors out of rightfully secured priority positions. This court finds that the attorney charging lien created by the Amended Agreement is invalid and against public policy.

TCO, 8/14/14, at 5-6 (attached to Appellant's Brief as Appendix C).

Moreover, we conclude that the 2008 Fee Agreement is champertous and, therefore, invalid.

> Champerty may be defined as the unlawful maintenance of a suit in consideration of some bargain to have a part of the thing in dispute or some profit out of the litigation. Maintenance is an officious intermeddling in a suit that in no way belongs to one, by maintaining or *assisting either party with money* or otherwise, to prosecute or defend it.[13] An agreement by a stranger to defray the expenses of a suit in which he has no interest or to give substantial support and aid thereto in consideration of a share of the recovery or the proceeds thereof is condemned by the courts as champertous[.]

*In re Frazier's Estate*, 75 Pa. D.&C. 577, 594 (1951) (emphasis added).

*See also Frank v. TeWinkle*, 45 A.3d 434, 438 (Pa. Super. 2012) (noting that "the common law doctrine of champerty remains a viable defense in Pennsylvania.")

In order to establish a *prima facie* case of champerty, the following three elements must exist: (1) the party involved must be one who has no legitimate interest in the suit; (2) the party must expend its own money in prosecuting the suit; and (3) the party must be entitled by the bargain to share in the proceeds of the suit. 16 Summ. Pa. Jur. 2d Commercial Law § 4:88 (2d ed.). *See also Belfonte v. Miller*, 243 A.2d 150, 152 (Pa. Super.

---

[13] "The distinction between maintenance and champerty is this: Where there is no agreement to divide the thing in suit, the party intermeddling is guilty of maintenance only; but where he stipulates to receive part of the thing in suit, he is guilty of champerty." *In re McIlwain's Estate*, 27 Pa. D.&C. 619, 622 (1942).

1968) (defining a champertous agreement as "one in which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense in consideration of receiving a share of what is recovered").

The requisite elements of champerty have all clearly been met in the present case. The Litigation Fund Investors are completely unrelated parties who had no legitimate interest in the Bayer Litigation. The Litigation Fund Investors loaned their own money simply to aid in the cost of the litigation, and in return, were promised to be paid "principal, interest, *and incentive*" out of the proceeds of the litigation. **See** 2008 Fee Agreement (emphasis added). "Under Pennsylvania law, if an assignment is champertous, it is invalid." **Frank**, 45 A.3d at 438. Accordingly, we are constrained to conclude that the 2008 Fee Agreement is invalid and, therefore, Appellant is not entitled to any fees under said agreement.

In light of our determination that Appellant does not have a valid claim for attorney fees, we deem the issues raised by Appellant regarding the priority of his right to payment over PAFCO and "persons who were not legitimate litigation fund investors" to be moot and, therefore, we need not address the merits of these claims. "It is well established that the appellate courts of this Commonwealth will not decide moot … questions." **Commonwealth v. Smith**, 486 A.2d 445, 447 (Pa. Super. 1984).

Finally, we address Appellant's unjust enrichment claims. Appellant avers that the trial court erred in finding that he has no standing to bring

unjust enrichment claims against Appellees. Appellant's Brief at 21. Additionally, Appellant asserts that Appellees were "unjustly enriched as a result of directly receiving the benefits of [his] legal services." *Id.* at 27.

> "Unjust enrichment" is essentially an equitable doctrine. The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

*Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993) (citations omitted).

Here, it is clear that Appellant lacks standing to raise unjust enrichment claims against Appellees. As explained by the trial court:

> [Appellant] lacks standing to bring the claim for unjust enrichment against non[-]clients[,] PAFCO and the Litigation Fund Investors. The case law provides that a discharged attorney does not have a *quantum meruit* action against the attorney who ultimately settles the case, but may have a valid *quantum meruit* claim against the client. [*See Mager v. Bultena*, 797 A.2d 948 (Pa. Super. 2002)]. The same concept applies here. At no time were PAFCO and the Litigation Fund Investors [Appellant's] clients nor did [Appellant] represent PAFCO or the Litigation Fund Investors in the underlying action. [Appellant's] client was PDI. Hence, [Appellant] may only recover its attorney fees against PDI, its client and not third party creditors.

TCO, 5/11/15, at 6 (footnotes omitted). We discern no abuse of discretion or error of law by the trial court and, thus, we uphold its decision. Moreover, we concur with the trial court's observation that Appellant's only legitimate potential claim for attorney fees lies with his former client, PDI, who is not a party in this appeal.

Additionally, even if Appellant was found to have standing, his claims of unjust enrichment against Appellees are wholly without merit.

> Although PAFCO and the Litigation Fund Investors did realize a benefit from [Appellant's] legal services, the distribution of the proceeds by PDI to PAFCO and by PAFCO to the Litigation Fund Investors does not constitute unjust enrichment. PAFCO was a perfected secured creditor. Secured creditors with valid UCC-1 filings have priority over unsecured creditors. This court has already ruled that [Appellant] did not have a charging lien providing him with a security interest in the Bayer Proceeds. As such, [Appellant] was an unsecured creditor. Since PAFCO was a secured creditor and [Appellant] was an unsecured creditor, the distribution of the verdict funds to PAFCO before any payments to [Appellant] was proper based on the priority of perfected security interests. Hence, the distribution and retention of the litigation funds by PAFCO is not unjust. Consequently, the cross[-]claim for unjust enrichment fails against PAFCO.
>
> Similarly, the distribution to the Litigation Fund Investors also fails to satisfy the unjust requirement for a claim of unjust enrichment to exist. PAFCO, the holder of a perfected secured interest, was properly in possession of the verdict proceeds once the tax obligations were satisfied. Once the funds were in PAFCO's possession, PAFCO returned the principal loaned by the Litigation Fund Investors. PAFCO's rights to the proceeds were superior to that of [Appellant]. Once in PAFCO's possession, PAFCO was privileged to distribute the funds to the Litigation Fund Investors if it so chose. As such, [Appellant's] claim for unjust enrichment fails against the Litigation Fund Investors as well.

- 13 -

TCO, 5/11/15, at 5-6 (footnotes omitted). After careful review, we determine that the trial court's findings are adequately supported by the record.

As Appellant has failed to establish a genuine issue of material fact, we conclude that the trial court did not commit an error of law or abuse its discretion when it granted Appellees' supplemental motions for summary judgment.

Order affirmed.
Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/13/2016