J-S28013-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| OKH-PHL1, LLC AND CHADDSFORD REALTY, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| | : | No. 463 EDA 2024 |
| GLENN A. GABE AND JOSEPH A. CAVILLE | : | |

Appeal from the Judgment Entered February 2, 2024
In the Court of Common Pleas of Delaware County
Civil Division at No: CV-2022-000035

BEFORE: STABILE, J., MURRAY, J., and LANE, J.

MEMORANDUM BY STABILE, J.:                    **FILED OCTOBER 29, 2024**

OKH-PHL1, LLC ("OKH"), appeals from the judgment entered in the Court of Common Pleas of Delaware County (trial court) upon a directed verdict in favor of Appellees Glenn A. Gabe and Joseph A. Caville (collectively "Appellees").[1] Upon review, we affirm.

On July 27, 2021, OneKeyHomes PHL, LLC ("OneKey") and Appellees signed a letter of intent for OneKey to purchase 57 residential homes from Appellees for $7,000,000. N.T., Non-Jury Trial 8/23/23, Exhibit P-1. Randolph Hope, Chief Executive Officer of OneKey at that time, drafted the letter of intent. *Id.* at 26, 29. The buyer was listed as "an affiliate of

_____

[1] Chaddsford Realty, LLC did not appeal the judgment.

[OneKey]." ***Id.***, Exhibit P-1. The letter of intent was "subject to the execution of a definitive Agreement of Sale" and included the following language:

> In addition to the specific terms and conditions set forth herein, Buyer's purchase of the Property shall be on such other terms as are customary for transactions of this nature, which the parties agree to incorporate in the definitive Agreement of Sale, to be negotiated in good faith and executed by the parties.

***Id.***, Exhibit P-1.

On August 5, 2021, Mr. Hope sent Appellees a draft Agreement of Sale via email which listed the buyer as OneKey. ***Id.*** at 37, Exhibit P-3. Appellees responded the next day with a list of concerns, and on August 12, 2021, sent additional concerns and requested proof of funding from OneKey. ***Id.***, Exhibit P-3. OneKey never provided proof of funding to Appellees. ***Id.*** at 73.

On August 17, 2021, Appellees notified Mr. Hope that they were no longer interested in selling their residential portfolio because it was not financially viable. ***Id.*** at 42, Exhibit P-3. The same day, Mr. Hope responded that OneKey "invested a tremendous amount of time and would like to have the opportunity to vet any possible solutions [to facilitate the sale]." ***Id.*** at 45, Exhibit P-3. However, OneKey did not consider taking legal action against Appellees due to their decision not to sell. ***Id.*** at 81.

On December 14, 2021, OneKey assigned its "rights as Buyer pursuant to a July 27, 2021 Letter of Intent" to OKH. ***Id.*** at 51, Exhibit P-4. The assignment reads:

> FOR VALUE RECEIVED, the receipt and legal sufficiency of which are hereby irrevocably acknowledged, the undersigned, ONEKEY

HOMES PH[L], LLC ("Assignor"), hereby assigns, transfers, conveys, sets over and delivers unto [OKH] ("Assignee"), all right, title and interest whatsoever, in and to the following:

A.      All of Assignor's rights as Buyer pursuant to a July 27, 2021 Letter of Intent . . . to purchase the multiple real properties . . . identified in Exhibit A to the Letter of Intent, and the right to purs[ue] any and all legal rights and remedies available to Buyer against [Appellees]; and

B.      All of Assignor's other rights as may be related to or associated with the rights specified in this Assignment, under the Letter of Intent and/or in connection with the properties, by law, or otherwise, or as may be reasonably necessary or required in order for Assignee to exercise the rights and privileges which are being assigned hereunder.

Assignor hereby agrees to execute such other documents, and to promptly undertake such other actions, at the written direction of Assignee, in order to reasonably assist Assignee in carrying out the intent and purposes of this Agreement.  In that regard, Assignor appoints Donald J. Weiss, Esquire as attorney-in-fact to execute such documents or to perform such acts in the name of Assignor or Assignee for such purposes.

*Id.*, Exhibit P-4.  Notably, OKH was not officially formed until December 27, 2021 – 13 days *after* the assignment was made.  *Id.* at 124-25.  Donald Weiss, Esquire,[2] the sole owner of OKH, testified that "the sole purpose [of creating it] was to initiate the litigation and potentially buy the properly if that were the ultimate result."  *Id.* at 125.  This is evidenced by a December 20, 2021, letter confirming the assignment:

The rights of the designated Buyer ("an affiliate of [OneKey]") to the July 27, 2021 Letter of Intent are being assigned . . . to [OKH], a company controlled by Don Weiss. **OKH will engage Marc A. Zaid Esq. ("Zaid") to initiate a civil lawsuit** on behalf of

_____

[2] Attorney Weiss is also the sole owner of Chaddsford Realty, LLC, a party to the action, but not subject to this appeal.  *See id.* at 100-01.

Chaddsford in Delaware Co. CCP, against [Appellees] and all owners of record . . . on an attorney fee arrangement as agreed between OKH and Zaid.  OKH also will file a *lis pendens* against each of the real properties referenced in the Letter of Intent ("Properties").  The **alternative claims in the lawsuit will be** (A) to compel [Appellees] to **specifically perform the contract** obligations under the Letter of Intent to sell and convey the Properties for the Purchase Price of $7,000,000, **or** (B) to claim breach of contract **money damages** for the difference between $7,000,000 and the higher appraised fair market value of the Properties.  The lawsuit **will include a separate claim by Chaddsford Realty, LLC** for a broker commission.

Randy Hope will cooperate as a witness to corroborate relevant events and to authenticate relevant documents.  Randy Hope will provide OKH with due diligence information obtained from [Appellees] relating to the Properties, including operating expenses and net operating income, which information can be used to obtain an independent appraisal, if needed for the lawsuit.

**Upon either a settlement or a successful conclusion of the lawsuit**, **OKH will compensate [OneKey]** either (A) if specific performance is awarded, for 10% of OKH net profits obtained from a flip of the Properties to a third party (net profits meaning net of attorneys fee paid to Zaid), or (B) if money damages are achieved (related solely to breach of the Letter of Intent), for 10% of the money damages.  **OKH will be deemed as an "an affiliate of [OneKey]" because of the financial arrangements above**.

*Id.*, Exhibit P-7 (emphases added).  The letter was written on Attorney Weiss' letterhead, signed by Attorney Weiss and accepted by Mr. Hope.  ***See id.***

On January 3, 2022, OKH filed a complaint against Appellees as outlined above – alternative claims of specific performance or money damages – as well as a separate claim for money damages on behalf of Chaddsford Realty, LLC.  The trial court sustained Appellees' preliminary objections, and OKH filed an amended complaint with the same claims.  Appellees denied that OKH had rights as a buyer, denied the existence of a legally binding contract, denied

that any purported rights were assigned, and asserted that OKH was not a real party in interest. *See* Answer and New Matter, 8/1/22.

Appellees filed a motion for summary judgment on the basis that the agreement between OKH and OneKey was illegal and invalid because it was champertous.[3] Appellees also filed a petition to amend their new matter to include the defenses of champerty and illegality. The trial court denied summary judgment but permitted Appellees to amend their new matter.

On August 23, 2023, a non-jury trial was held. At the conclusion of the evidence, Appellees moved for a directed verdict based on the defense of champerty. N.T. Trial, 8/23/23, at 133. After a brief recess, the trial court granted Appellees motion for a directed verdict on counts 1 and 2. *Id.* at 142. Judgment was formally entered on the docket on February 2, 2024. This appeal followed. Both the trial court and OKH have complied with Pa.R.A.P. 1925.

OKH raises a sole issue for our review: "Did the lower court commit error of law or abuse of its discretion by entering a non-suit (directed verdict) ruling against OKH regarding OKH's Count 1 and Count II Breach of Contract claims against [Appellees]?" Appellant's Brief at 7.

---

[3] As explained, *infra,* a champertous agreement is one "in which a person having otherwise no interest in the subject matter of an action undertakes to carry on the suit at his own expense in consideration of receiving a share of what is recovered." *Richette v. Solomon*, 187 A.2d 910, 918 (Pa. 1963).

Our scope of review when reviewing a trial court's entry of a directed verdict is "limited to determining whether the trial court abused its discretion or committed an error of law that controlled the outcome of the case." ***Berg v. Nationwide Mut. Ins. Co., Inc.***, 44 A.3d 1164, 1170 (Pa. Super. 2012), *appeal denied*, 65 A.3d 412 (Pa. 2013) (citation omitted). "A directed verdict may be granted only where the facts are clear and there is no room for doubt." ***Lear Inc. v. Eddy***, 749 A.2d 971, 973 (Pa. Super. 2000) (citation omitted). "In deciding whether to grant a motion for a directed verdict, the trial court must consider the facts in the light most favorable to the nonmoving party and must accept as true all evidence which supports that party's contention and reject all adverse testimony." ***Id.***

Here, at the close of evidence in a non-jury trial, the trial court granted Appellees motion for directed verdict, stating:

> Upon reviewing the law and upon reviewing the letter of intent, which lists the buyer as an affiliate of [OneKey] and having heard testimony today that [OKH] has no connection whatsoever with [OneKey], there's no interest on either side, membership on either side, I find that [OKH] does not have standing to bring this suit.

N.T. Non-Jury Trial, 8/23/23, at 142. The trial court elaborated that its ruling was based on the defense of champerty in its 1925(a) opinion. Trial Court Opinion, 4/3/24, at 5-6.

Champerty is defined as:

> [a]n agreement between an officious intermeddler in a lawsuit and a litigant by which the intermeddler helps pursue the litigant's claim as consideration for receiving part of any judgment proceeds; . . . an agreement to divide litigation proceeds between

the owner of the litigated claim and a party unrelated to the lawsuit who supports to helps enforce the claim.

***Frank v. TeWinkle***, 45 A.3d 434, 438 (Pa. Super. 2012), *appeal denied*, 56 A.3d 398 (Pa. 2012) (citing Black's Law Dictionary (8th ed.)). "Under Pennsylvania law, if an assignment is champertous, it is invalid." ***Id.*** Three elements are necessary to establish champerty: (1) the party involved must be one who has no legitimate interest in the suit, but for the agreement; (2) the party must expend its own money in prosecuting the suit; and (3) the party must be entitled by the bargain to share in the proceeds of the suit. ***WFIC, LLC v. LaBarre***, 148 A.3d 812, 818 (Pa. Super. 2016).

In the present case, the trial court reviewed the documents presented during the non-jury trial and determined the assignment of rights between OKH and OneKey was champertous:

> The testimony at trial established that [OneKey] had no intention or interest in pursuing litigation against [Appellees]. Donald Weiss as the broker for ChaddsFord Realty, LLC and as the [sole] member of [OKH] sought to purchase and prosecute the Letter of Intent. This court found that the doctrine of champerty barred that action. [Appellees] raised this defense well in advance of trial through their pleadings and summary judgment motion. The Letter of Intent did not authorize assignment and the magnitude of the proposed purchase and sale properly limited the identities of the parties in interest. The testimony of Glenn Gabe at trial disclosed concern and alarm regarding the source of funds, office location and records it sought from [OneKey] in the weeks after the Letter of Intent was executed.
>
> The record herein is void of any specific conduct or expectation by [OneKey] to enforce the Letter of Intent between August 17, 2021 when [Appellees] announced their intent to terminate negotiations and the December 14, 2021 Assignment when [OKH] obtained the right to purchase the 57 units and "any and all legal rights and remedies available to Buyer" (P-4). The December 20, 2021

- 7 -

> litigation support Agreement between Randy Hope and Donald J. Weiss further confirmed that a violation of the champerty doctrine was established (P-7).

Trial Court Opinion, 4/3/24, at 6-7.

We agree with the trial court's analysis. First, OKH has no legitimate interest in the litigation. OKH was not in existence when the July 7, 2021 letter of intent was signed or when the December 14, 2021 assignment of rights was executed. OKH was officially formed on December 27, 2021. The documents established that OKH was specifically formed to litigate the purported rights granted to OneKey in the letter of intent. Thus, OKH has no legitimate interest in the litigation involving the letter of intent but for the ostensible assignment. Second, the litigation was fully funded by OKH. N.T., Non-Jury Trial 8/23/23, at 129. Lastly, per the assignment, OKH was entitled to 90% of the proceeds of the litigation. *See* Exhibit P-7. Accordingly, we discern no error in the trial court's determination that the assignment between OKH and OneKey was champertous and thus invalid.

OKH contends that the trial court erred because Appellees waived the issue of standing by failing to raise it in their answer and new matter, and therefore, the trial court was precluded from ruling that OKH lacked standing. *See* Appellant's Brief at 10-11. We disagree.

Rule 2002 of the Pennsylvania Rules of Civil Procedure provides that "all actions shall be prosecuted by and in the name of the real party in interest[.]" Pa.R.Civ.P. 2002(a). Though undefined in the Rules, the generally accepted definition is that the real party in interest is "the person who has the power to

discharge the claim upon which suit is brought and to control the prosecution of the action brought to enforce rights arising under the claims." **Clark v. Cambria Cty. Bd. Of Assessment Appeals**, 747 A.2d 1242, 1246 n.9 (Pa. Cmwlth. 2000), *appeal denied*, 798 A.2d 1292 (Pa. 2002). The concept of real party in interest is related to standing,

> which is concerned with the question of *who* is entitled to make a legal challenge to the matter involved. Our Supreme Court has further explained:
>
> Although our law of standing is generally articulated in terms of whether a would-be litigant has a "substantial interest" in the controverted matter, and whether he has been "aggrieved" or "adversely affected" by the action in question, we must remain mindful that the purpose of the "standing" requirement is to insure that a legal challenge is by a proper party.

**Pa. Senate Intergovernmental Operations Comm. v. Pa. Dept. of State**, 290 A.3d 321, 329 (Pa. Cmwlth. 2023) (citations omitted; emphasis in original).

It is well-settled in Pennsylvania that "[a] plaintiff who sues on what would be another's claim except for such champertous agreement will not be permitted to maintain an action . . . as such a plaintiff is **not a "real party in interest"** as required by Pa.R.C[iv].P. 2002 and **would not have standing** to maintain the action." **Clark**, 747 A.2d at 1246 (emphases added). A challenge to a plaintiff's capacity to sue must be "specifically raised in the form of a preliminary objection or in the answer to the complaint." **Erie Indem. Co. v. Operators Cas. Co.**, 272 A.2d 465, 467 (Pa. 1971).

Here, OKH's waiver argument is belied by the record. Appellees challenged OKH's capacity to sue in both their New Matter and Amended New Matter. Paragraph 1 of Appellees' New Matter asserted that OKH was not the real party in interest. Answer and New Matter, 8/1/22 at 4 (unpaginated). Appellees then filed an amended new matter and asserted that OKH's claims were "barred by the doctrine of champerty." Amended New Matter, 5/10/23. As such, the issue was not waived and the trial court properly determined OKH lacked the capacity to sue because of a champertous assignment.

Alternatively, OKH contends that the trial court erred in determining that it was not "an affiliate of OneKey" and thus was not the "buyer" as defined in the letter of intent. *See* OKH's Brief at 11-12. OKH contends, "[t]he evidence here showed that OKH and OneKey were affiliates simply because OneKey and OKH had a connection and association with each other. This was because OneKey had a financial interest in OKH's endeavors." *Id.* at 12.

OKH was not defined as an "affiliate" of OneKey under the letter of intent. Further, our Associations Code defines an affiliate as "[a] person that directly, or indirectly through one or more intermediaries, controls, is controlled by or is under common control with a specified person." 15 Pa.C.S.A. § 102 (definitions).[4] By its own admission, OneKey did not control

_____

[4] This statutory definition is consistent with the usual and customary definition of the term. *See* 1 Pa.C.S.A. § 1903 ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]"). The Cambridge dictionary defines affiliate as "an organization that is connected with or controlled by another, usually larger, organization." *Affiliate*, Cambridge Dictionary, (last accessed 10/7/24).

OKH, or vice versa. **See** OKH's Brief at 11; **see also** N.T., Non-Jury Trial 8/23/23, at 71. As a result, OKH cannot be deemed an affiliate of OneKey. Additionally, it clearly was not the intent of the parties to the letter of intent for OKH to become the buyer in this real estate transaction, since OKH was not a legal entity at the time of the letter of intent, and OneKey subsequently was listed as the exclusive "buyer" in the draft agreement of sale. Accordingly, no relief is due on this claim.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/29/2024